179 N.J. Super. 234 (1981)
431 A.2d 179
THE TITLE INSURANCE CORPORATION OF PENNSYLVANIA, PLAINTIFF,
v.
MARGUERITE WAGNER ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division Atlantic County.
Decided February 19, 1981.
*235 Clifford J. Schoner for plaintiff (Reiners & Davis, attorneys).
Norman L. Zlotnick for defendant Battaglia (Bloom & Zlotnick, attorneys).
*236 Marvin I. Block for defendant Wagner.
HAINES, J.S.C.
This is a declaratory judgment action. Plaintiff Title Insurance Corporation of Pennsylvania ("T.I.C.P.") insured the title to certain residential property purchased by defendant Marguerite Wagner ("Wagner"), who took title as trustee for her minor children. Her title has been challenged in a suit commenced by Manuel Battaglia, her grantor.
Battaglia owned two adjoining properties in Atlantic City, New Jersey. He claims that he agreed to sell only the front property to Marguerite Wagner for $25,000 and at settlement delivered an executed plain warranty deed to her describing that property. He alleges that the buyer, without his knowledge or consent, added the description of his rear property to the deed before it was recorded. He seeks to impose a constructive trust on the rear property, demands a reconveyance thereof and seeks compensatory and punitive damages. The first count of his complaint alleges fraud; the second count claims that the alteration of the deed was the result of a "unilateral negligent mistake" of Marguerite Wagner or was the "mutual mistake" of the seller and the buyer.
T.I.C.P.'s policy insures both of the adjoining properties described in the deed. It brings this action seeking a declaration that it has no obligation to defend Battaglia's suit or to pay any damages Wagner may suffer. It argues that the exclusions in the policy effectively deny the right of defendant to any coverage. A stay of the underlying suit was obtained before defendant in that action (Wagner) filed an answer. The pretrial order in this declaratory suit, however, reflects her contention that the deed was not altered.
The policy provides in part that it insures against
... loss or damage ... costs, attorneys' fees and expenses ... sustained or incurred by the insured by reason of:
1. Title to the estate or interest described in Schedule A being vested otherwise than as stated therein;

*237 2. Any defect in or lien or encumbrance on such title;
...
4. Unmarketability of such title.
It also contains the following promise:

The Company, at its own cost and without undue delay, shall provide for the defense of an insured in all litigation consisting of actions or proceedings commenced against such insured, or a defense interposed against an insured in an action to enforce a contract for a sale of the estate or interest in said land, to the extent that such litigation is founded upon an alleged defect, lien, encumbrance, or other matter insured against by this policy. [Emphasis supplied]
This provision of the policy would protect defendant, except for the company's contention that policy exclusions 3(a) and 3(c) both deny coverage. The first of these excludes from coverage "[d]efects ... adverse claims, or other matters ... created ... by the insured claimant." T.I.C.P. contends that the title defect in question was created by Marguerite Wagner. The second exclusion denies coverage for claims "resulting in no loss or damage to the insured claimant." T.I.C.P. argues that the suit will result in no loss to its insured.
The company now moves for summary judgment. Some facts are in dispute, but those involving the central issues in this declaratory action are not. These issues may therefore be decided as a matter of law. Judson v. Peoples Bank & Trust Co., etc., 17 N.J. 67 (1954).
Under general rules T.I.C.P.'s obligation to defend depends entirely upon the allegations of the complaint against the insured. When those allegations set forth a claim which is within the policy coverage, the company must defend; when it does not, no defense is required. Thus, the complaint and the policy are read together to determine the question; facts outside the complaint are not to be considered. Burd v. Sussex Mutual Ins. Co., 56 N.J. 383, 388 (1970); Ohio Casualty Ins. Co. v. Flanagin, 44 N.J. 504, 512 (1965). The complaint here alleges fraud and mistake. The company argues that both allegations involve intentional acts and therefore fall within one of the exclusionary clauses of the policy eliminating coverage. It claims, further, that the insured will suffer no compensable loss, even if she *238 loses the Battaglia suit, so that the second exclusion in the policy applies, also eliminating coverage.

A. The Absence of Loss.

Exclusion 3(c) may be disposed of quickly. It denies coverage for claims "resulting in no loss or damage to the insured claimant." It is argued that the insured will suffer no loss if she wins the suit and, if she loses, will do so only because she was not entitled to the rear property in the first instance, so that no "loss" in the legal sense would occur. Aja v. Appleton, 86 Nev. 639, 472 P.2d 524 (Sup.Ct. 1970). The defense, however, points to the loss of use or rental value of the rear premises which Battaglia's suit has caused. Since this loss may be predicted on the basis of the facts alleged in the complaint, it represents actual potential damages which can be recovered under the policy. Consequently, this exclusion does not eliminate coverage.

B. The Creation of the Adverse Claim by the Insured

(1) Fraud

Exclusion 3(a) of the policy denies coverage for "[d]efects, adverse claims, or other matters ... created ... by the insured." In the present case the underlying complaint makes alternative claims for relief  one based upon fraud, the other upon mistake. T.I.C.P. must defend the action unless both claims fall within the policy exclusion. Danek v. Hommer, 28 N.J. Super. 68, 77-78 (App.Div. 1953), aff'd 15 N.J. 573 (1954).
A clause similar to 3(a) was considered in Keown v. West Jersey Title and Guar. Co., 161 N.J. Super. 19, 26-27 (App.Div. 1978), in which a title defect was caused when the insured plaintiff exceeded his investment powers as a trustee. The court, quoting from Feldman v. Urban Commercial, Inc., 87 N.J. Super. 391, 404 (App.Div. 1965), said:
... [T]he word "create" connotes "the idea of knowledge, the performance of some affirmative act by the insured, a conscious or deliberate causation." [at 25]
*239 It was found that the insured had been negligent and therefore not involved in "deliberate" behavior. As a result, the title company was held to be responsible. Application of the Keown rule here will eliminate T.I.C.P.'s obligation to defend against the fraud allegation because it obviously involves a defect "created" by the insured. However, that conclusion ignores the position of defendant, namely, that she did not alter the deed and consequently did not commit a fraud. The usual rule, cited above, limits the inquiry to the complaint; facts outside that pleading are not relevant to considerations of coverage. Most of the cases which cling to this rule, however, deal with situations in which the allegations of the complaint require the insurer to defend, while the carrier, relying on facts outside the complaint, denies that obligation. When the rule is used in these cases, therefore, it favors the insured, reflecting the requirement, laid down in a multitude of cases, that insurance policies are to be construed liberally in favor of insureds whenever construction becomes necessary. E.g., Sandler v. N.J. Realty Title Ins. Co., 36 N.J. 471 (1962). Here, however, it is the insured whose claim of coverage relies upon facts which are outside the complaint. Should that make a difference?
The insistence upon limiting the inquiry to the facts in the complaint is not universal. In Ohio Casualty Ins. Co., supra, facts were developed through a trial of the declaratory judgment action; those facts were used by the Supreme Court in deciding whether coverage existed. In Condenser Service v. American Mut. Liab. Ins. Co., 45 N.J. Super. 31 (App.Div. 1957), the issue was remanded to the trial court to determine whether the facts required application of the policy exclusion. Burd, supra, arose after completion of the third-party trial, in which the insurer had refused to appear. The court ordered a hearing on the coverage issue. The Ohio Casualty court, supra, while suggesting that the declaratory action itself should not always be entertained, acknowledged the propriety of trying that action in "special circumstances." It said:

*240 ... Except in unusual cases, the court should normally ... refuse to consider a declaratory judgment action prior to the filing of a damage suit against the insured, where the issue under the former necessitates a determination of the causation of the accident ... However, special circumstances may warrant the trial of such factual issues before the trial of the damage action.... [44 N.J. at 512-513]
While these cases do not deal with title insurance, they are concerned with other forms of liability insurance and are appropriately considered when addressing the present issue.
It therefore appears that the court enjoys some discretion in deciding whether facts outside the complaint may be used to determine the coverage issue. In exercising that discretion the realities of the insurance business cannot be ignored. Insurance policies are issued for a premium based upon the risk assumed. Policy exclusions limit the risk and lower the premium. They are drafted with knowledge of the general rule, namely, that the language used will permit the insurer to deny coverage when the allegations of a complaint fall within its ambit. Consequently, an insurer should be entitled to rely upon that rule unless "special circumstances" exist. Here, the T.I.C.P. policy did not insure defendants' title against all claims and the company had no obligation to do so; it did not cover a groundless claim based upon an excluded title defect. The fraud issue raised by Battaglia presents no special circumstances. The bare denial of the claim is not exceptional and no unexpected hardship appears; no compelling argument favors a trial of the declaratory action. Consequently, the obligation of T.I.C.P. to defend is dependent upon the allegations of the complaint. It rests in part upon a claim of fraud; that claim is clearly within the language of the exclusion and need not be defended by the company.

(2) Mistake

The claim of mistake, whether unilateral or mutual, is in a different category. T.I.C.P. argues that this claim is not covered because it also involves a defect "created" by the insured. However, the term "mistake" does not connote affirmative *241 wrongdoing. It has been defined as "a state of mind that is not in accord with the facts," Restatement, Contracts, § 500 at 958 (1979), and is not normally considered to include intentional acts. It is obvious, for example, that an erroneous statement, intentionally made, is not a "mistake." Here, the "unilateral mistake" of the insured can only be her erroneous belief that she had a right to alter the deed. This is no different than the mistakenly held belief of the insured in Keown that he had authority to invest in the property. In that case negligent causation of the defect was held not to be a "creation" within the meaning of the exclusionary clause. Here, the result must be the same. The allegation of "mutual mistake" is even more clear. It must be read as saying that Battaglia and Wagner both participated in the alteration of the deed, but did so through innocent error. It follows that the claim of mistake is not excluded from coverage by the language of defendants' policy and would have to be defended by the insurer except for its present position of conflict.
That conflict becomes apparent when the Company's position in the third-party suit is examined. T.I.C.P. is best served if Battaglia's claim of fraud is sustained in the underlying litigation. It has no obligation to defend against a fraud charge. If it does so, it can recover defense costs from Wagner. Further, it will not be responsible for any damages suffered by Wagner, if fraud is proved. On the other hand, if defendant refutes the fraud and the mistake claims, T.I.C.P. will be responsible for the cost of defense and for damages. It will also be liable for defense costs, but not damages, if only mistake is proved. Thus, T.I.C.P. is better off if Wagner loses than it is if she wins. In these circumstances it cannot provide a defense with absolute fidelity and therefore may not appear in the underlying litigation. At the same time, since it may not participate in that case, T.I.C.P. should not be bound by factual determinations reached in the Battaglia suit which relate to coverage. The problem was addressed in Burd, supra, and resolved as follows:

*242 ... [I]f a carrier defends an action in the face of a coverage issue, the carrier must pay the judgment (unless the insured expressly agreed to a reservation of that issue), and if the carrier does not defend the tort claim because a plaintiff's verdict will not resolve the coverage problem in the insured's favor or because the carrier cannot defend with complete fidelity to the insured's sole interest, then the carrier may be heard upon the coverage issue in a proceeding upon the policy. And of course if the carrier does not defend, it will have to reimburse the insured for the cost of defense if the tort judgment is held to be within the covenant to pay. [56 N.J. at 394]
In the present case, the underlying suit should proceed to judgment. T.I.C.P. may not participate. At the conclusion of that case, Marguerite Wagner, trustee, if she is successful, at least as to the fraud issue, may claim reimbursement from the company for the cost of defense. If she is entirely successful, she may seek to recover her losses as well. T.I.C.P. may then litigate the coverage issue notwithstanding conclusions reached in the Battaglia action.[1]
NOTES
[1] James Wagner, husband of Marguerite Wagner, is a defendant named in the Battaglia suit. He claims the right to be defended by T.I.C.P. However, he is not an insured under the policy and T.I.C.P. has no obligation of any kind to him.