LEONARD BIDART AND BIDART BROTHERS, INDIVIDUALLY AND AS CO-PARTNERS, DBA EL TEJON CATTLE CO., APPELLANTS AND CROSS-RESPONDENTS, v. AMERICAN TITLE INSURANCE COMPANY, A FLORIDA CORPORATION, RESPONDENT AND CROSS-APPELLANT.

No. 16982

March 31, 1987                    734 P.2d 732

*Jolley, Urga, Wirth & Woodbury,* Las Vegas, for Appellants and Cross-Respondents,

*McAuliffe, White, Long & Guinan,* Reno, for Respondent and Cross-Appellant.

# OPINION

*Per Curiam:*

Appellant, El Tejon, brought this action against respondent, American Title, seeking damages for an alleged breach of the insurer's duty to defend. The district court found that El Tejon had not properly notified American Title of the action against it; that American Title was prejudiced by the lack of notice; and, that the action against El Tejon was not insured against in any event. El Tejon appeals the dismissal of its claim. Because we find that there is substantial evidence in the record in support of the decision below, we affirm.

Swallow Ranches (not a party to this case) owned some 12,000 acres in White Pine County. On December 6, 1966, Swallow and El Tejon executed an agreement whereby El Tejon paid Swallow $550,000 and Swallow executed a grant bargain and sale deed. The parties also executed a sales agreement reciting that El Tejon was to take legal title to the land; that the sales price was $550,000; and that the value of the property was $1,912,700.

On that same date, the parties executed an option to repurchase agreement specifying the time and price of repurchase. The deed was recorded but the agreement and repurchase agreement were not.

First Commercial Title (not a party to this case) caused a title insurance policy to be issued on behalf of American Title, with an effective date of December 13, 1967. The option agreement was recorded on January 9, 1968, after the title insurance policy was issued.

Within the month, El Tejon sought to refinance the lands through Connecticut General Life. This resulted in a new title search by First Commercial. The option agreement was discovered. On February 17, 1968, Swallow quitclaimed to El Tejon any interest it had in the option, thus removing the option of record.

At the same time, El Tejon and Swallow executed a *new* repurchase option, but did not record it until after the new deed of trust to Connecticut General was recorded.

In 1971, after the expiration of the option period, Swallow sued El Tejon in the district court in White Pine County, seeking rescission or, in the alternative, to have the deed declared to be a mortgage.

The complaint alleged economic coercion, fraud, coercion by slandering Swallow's credit rating to Swallow's creditors and the like. Later in 1971, Swallow filed a new complaint in the federal district court in Nevada. The matter was tried before Judge Thompson who ruled for El Tejon. Swallow appealed to the 9th Circuit but again El Tejon prevailed.

In December 1971, after the White Pine court action had been commenced and after the action in the federal court had commenced, but before the trial in the federal court, El Tejon's attorney wrote to Mr. O'Brien of First Commercial Title, informing him of the action, requesting a copy of the policy, and enclosing copies of all pleadings. O'Brien did *not* forward the information to American Title.

After the judgment from Judge Thompson but before the appeal, El Tejon's attorney wrote to O'Brien demanding reimbursement for the costs of the defense. This letter was forwarded to American Title. American Title, on the advice of counsel, did not respond. Following the successful defense of Swallow's appeal, El Tejon sued American Title for breach of its duty to defend. American Title answered generally. It alleged affirmative defenses including lack of notice and generally that the Swallow litigation was excluded from coverage. All motions for summary judgment on these issues were denied. The case proceeded to trial; the district court found for American Title. El Tejon appealed.

El Tejon first argues that a proper construction of the contract leads to the conclusion that American Title must defend any action concerning title to the land. The pertinent paragraph reads:

> The company, at its own cost and without undue delay shall provide (1) for the defense of the insured in all litigation consisting of actions or proceedings commenced against the insured . . . ; or (2) for such action as may be appropriate to establish the title of the estate . . . as insured, which

litigation or action in any of such events is founded upon an alleged defect, lien or encumbrance insured against by this policy, and may pursue any litigation to final determination in the court of last resort.

El Tejon contends that, because of the placement of the semicolon, American Title must defend against any attack on the insured title, even if the nature of the attack is not one against which the title company has insured. American Title contends that it need only defend when it has insured against the alleged defect. We think that the district judge properly construed the contract.

Generally, if a clause is ambiguous, it will be construed against the drafter, in this case American Title. Harvey's Wagon Wheel v. Macsween, 96 Nev. 215, 606 P.2d 1095 (1980). An insurer can restrict coverage but it must do so clearly. *Id.* However, the general rule of construction comes into play only if the clause is ambiguous. We think that the clause is sufficiently clear to justify affirming the decision of the district court. The question of whether a document is ambiguous turns on whether the clause as drafted will create reasonable expectations of coverage. Sullivan v. Dairyland Insurance Co., 98 Nev. 364, 649 P.2d 1357 (1982). The district court was justified in determining that El Tejon could not reasonably have expected American to defend attacks against which it had not insured. *Cf.* Snow v. Pioneer Title Ins. Co., 84 Nev. 480, 485, 444 P.2d 125, 128 (1968) (no duty to defend where there is no coverage).

Having determined that American Title's duty to defend did not arise unless the attack was one against which it had insured, we must now determine whether the policy covered the action by Swallow against El Tejon. The policy called for coverage against "defects" in the title existing as of the date of the policy, that were not created, suffered or agreed to by El Tejon.

The Swallow litigation was quite complex. Swallow sought to rescind the transaction on a number of different grounds. In addition, Swallow sought to have the deed declared to be an equitable mortgage.

Swallow sought rescission on various grounds, including fraud, economic coercion and similar misconduct on the part of El Tejon. Some of these claims were grounded in facts occurring after the effective date of the policy and are thus excluded from coverage. Others are grounded in alleged tortious acts of El Tejon. We think that a claim for rescission based on tortious misconduct is not a claim that the title is defective. Such claims,

rather, attack the manner in which the buyers acquired valid title. Safeco Title Insurance Co. v. Moskopoulos, 172 Cal.Rptr. 248 (Ct.App. 1981). We think further that the exclusion for defects created by the insured would apply to attacks based on the type of tortious conduct complained of by Swallow. *Id.*

As to the claim seeking to have the deed declared to be an equitable mortgage, we need not decide whether there is a claimed "defect" in the title. In order to prevail, Swallow would have had to prove that El Tejon intended the deed to operate as a mortgage. Robinson v. Durston, 83 Nev. 338, 432 P.2d 75 (1967). The intent would have to be evidenced by a number of objective factors. *Id.* We think that the district judge was justified in concluding that the equitable mortgage theory was excluded from coverage as "created" by El Tejon. Although an equitable mortgage action depends on several objective factors, the court is ultimately called upon to determine the subjective intent of the parties. The objective factors are simply evidence of the elusive subjective intent of the parties. Therefore, a claim that a deed absolute on its face is to operate as a mortgage is a claim that the parties intended to create the mortgage.

American Title has clearly and unambiguously excluded such attacks from its coverage. Where there is no potential for coverage, there is no duty to defend. Snow v. Pioneer Title Ins. Co., *supra.*

Based on our conclusion that the Swallow litigation did not give rise to a duty to defend, we affirm the judgment of the district court.

American Title has appealed from the decision of the district court denying its motion for attorneys fees. Pursuant to NRCP 68, American Title made a pre-trial offer to settle the case for $50,000. The offer was rejected. The district court found that the offer was low in light of the damages sought by El Tejon. The court also found that El Tejon was not unreasonable in rejecting the offer. The court found further that El Tejon brought the action in good faith.

The trial court properly considered the factors laid out by this court in Beattie v. Thomas, 99 Nev. 579, 668 P.2d 268 (1983). Where the court properly weighs the *Beattie* factors, an award of attorneys fees based on NRCP 68 is discretionary with the court. Its discretion will not be disturbed absent a clear abuse. Trustees, Carpenters v. Better Building Co., 101 Nev. 742, 710 P.2d 1379 (1985). We perceive no clear abuse of discretion in the instant case and we therefore affirm the judgment of the district court.