ROBERT R. KENT, MURIEL S. KENT, KRISTI KENT AND CINDI KENT, APPELLANTS, v. KENNETH K. KENT, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF GLORIA KENT, DECEASED, RESPONDENT.

No. 21647

July 2, 1992                                        835 P.2d 8

*Beckley, Singleton, DeLanoy, Jemison & List* and *Stephen S. Kent* and *Robert F. Saint-Aubin*, Reno, for Appellants.

*Bible, Hoy, Trachok, Wadhams & Zive*, Reno, for Respondent.

## OPINION

*Per Curiam:*

### THE FACTS

Thomas Kent ("Thomas"), Kenneth Kent ("Kenneth"), and Robert Kent ("Robert") are brothers, the sons of Ira and Margaret Kent.[1] Ira Kent founded the I.H. Kent Co., Inc. (the "corporation"), a corporation engaged in a variety of business activities in the Fallon, Nevada, area, including a grocery real property management. The brothers individually held shares of stock in the corporation; upon the death of their mother in 1986, they became the sole shareholders. At the time of trial in this matter, Robert held 45.04 percent of the corporation's shares, Kenneth held 24.77 percent and Thomas held 30.19 percent.

In addition to the corporation, the brothers owned, as tenants in common, a ranch (the "Dolf Ranch") located near Fallon. They acquired the Dolf Ranch by gift from Thomas Dolf, their maternal grandfather. The Dolf Ranch has been operated as an informal oral partnership (the "partnership"), first by Thomas Dolf and the Kent brothers and then, after Dolf's death in 1952, by the Kent brothers. Since 1952, additional parcels have been added to the original Dolf Ranch property.

Over the years, each of the Kent brothers has managed a separate part of the family's businesses: Thomas, the hardware and feed stores; Robert, the grocery store and the corporation's real property; and Kenneth, the ranch.

The death of the brothers' mother in 1986 triggered a dispute over the family property. The brothers were unable to reach an agreement for the distribution of the property, and, on April 8, 1988, Kenneth brought a partition action under NRS 39.010 against Robert and Thomas. The two sides also claimed against each other for breach of fiduciary duties, mismanagement and fraud in the management of the partnership and the corporation; but, pursuant to a pre-trial stipulation, the brothers dropped these claims.

The trial lasted five days. All of the parties testified and each side presented competing expert testimony on the valuation of the properties.

On July 26, 1990, the district court entered findings of fact and a judgment. The court found that the brothers jointly held thirty-nine parcels of land with a total value of $4,735,350.00. Of these

---

[1]The three factions in this case are Kenneth and his late wife Gloria, Thomas and his wife Eleanor, and Robert, his wife Muriel and their daughters Kristi and Cynthia. For ease of discussion, each faction will be referred to by the name of the brother.

thirty-nine parcels, the court found twenty-five to be corporation real property and valued it at $2,180,850.00. The court categorized the remaining fourteen parcels as partnership real property and valued it at $2,554,500.00. As for personal property, the court found a total net equity value of $551,362.00: $162,123.00 of corporation personal property, and $389,239.00 of partnership personal property. The district court then faced the daunting task of dividing $5,286,712.00 worth of property.

Although the district court could have forced a sale of all jointly held properties and then distributed the proceeds to the brothers pro rata after payment of expenses, taxes and creditors, the court expressly declined to use this method of partition because it would force the brothers to surrender the respective business each had operated for decades. Instead, the court chose to partition real and personal property separately and in kind, reasoning that only this method would equalize the partition without unduly burdening or benefitting any one brother, allow Kenneth to continue his ranching profession, and preserve Thomas' and Robert's respective businesses and inventories.

With these goals in mind, the district court awarded Kenneth $1,469,070.00 in real property, including the entire Dolf Ranch. Thomas and Robert received the remainder of the real property. Under this partition, Kenneth received $77,373.00 more than what his portion would have been under an exact distribution of the real property. The court corrected for this discrepancy by ordering Kenneth to pay owelty to Robert and Thomas. With respect to personal property, the court awarded all corporation personal property to Robert and Thomas, and all partnership personal property to Kenneth. This partition of personal property also left Kenneth with more than his share, and, consequently, the court ordered him to equalize the distribution by paying an additional $332,775.00 in owelty to Robert and Thomas.

Robert's appeal followed.[2]

## DISCUSSION

### I. *The Dolf Ranch*

Robert first contends that the district court improperly considered the sentimental attachment and income needs of Kenneth in awarding him the entire Dolf Ranch. According to Robert, partition does not yield to hardship, inconvenience or difficulty, and the financial status of the cotenants should not be considered by the court when partitioning property.

Robert's position is not persuasive. Though Nevada has a

---

[2]Thomas did not appeal.

statutory partition process (NRS 39.010-.490), a partition action is an equitable one in which the courts will apply the broad principles of equity. Dall v. Confidence Mining Co., 3 Nev. 485 (1868). Courts will decree partition ''so as to do the least possible injury to the several owners.'' *id.* at 489, and the district court's partition judgment here did just that. The court could have ordered all of the property sold and then distributed the proceeds. Instead, the court, motivated by a desire to keep each brother in his respective business, divided the property so as to achieve this result. We endorse the district court's approach. In our view, the manner and method of partition is properly animated by concern for the interests of the individual parties and the need, so far as is feasible to continue them, and their property, in useful occupation.

## II.  *The Owelty Award*

NRS 39.440 provides:

> When it appears that partition cannot be made equal between the parties, according to their respective rights, without prejudice to the rights and interest of some of them, . . . the court may adjudge compensation to be made by one party to another, on account of the inequality of partition . . . .

Robert contends that because adequate parcels of land existed that easily could have been divided among the brothers according to their ownership interests, the district court improperly awarded cash in lieu of real property. According to Robert, owelty can be used only where property cannot be divided according to the ownership interests of the parties.

Robert urges too limited a role for owelty in partition actions. Recognizing that the fundamental goal of partition is to divide the property so as to be fair and equitable and confer no unfair advantage on any of the cotenants, *e.g.*, Blongquist v. Frondsen, 694 P.2d 595 (Utah 1984), the district court awarded each brother sufficient and necessary property to continue his respective business. As the district court found, a distribution of property consistent with Robert's demands would prejudice Kenneth, and this prejudice would contravene the language of NRS 39.440 providing for owelty when equal partition cannot be achieved ''without prejudice to the rights and interests of some of [the parties].'' Thus, we conclude that the district court's owelty award is equitable and consistent with the terms of NRS 39.440.

## III.  *The Coleman Dam Parcel*

The Coleman Dam parcel is a forty-acre parcel of undeveloped

ranch real property through which the Carson River runs. Appraisers for both parties testified that the parcel was land-locked with no access or easement from existing county roads through the land of adjoining landowners. Kenneth's appraiser testified that the parcel currently had a value of $20,000.00, and Robert's appraiser assigned a value of $25,000.00. Kenneth's appraiser further testified that the parcel would be worth $140,000.00 if legal access could be obtained. After hearing testimony from the parties and their appraisers, the district court found the parcel's value to be $140,000.00, concluding that legal access had been "obtainable" by Robert. In the partition judg-ment, the court awarded this parcel to Robert and Thomas. Robert asserts there is insufficient evidence to support the district court's valuation. We agree.

Though access may be obtainable in the future, it had not been obtained by the time of trial, and one can only speculate if it will be obtained in the future. In our view, a parcel with "obtainable" access cannot be valued as if access had already been obtained. Therefore, we hold that the district court erred in assigning a value of $140,000.00 to the Coleman Dam parcel.

To remedy this error, the district court must first devalue the Coleman Dam parcel, selecting between the $20,000.00 and $25,000.00 valuations provided by the parties' appraisers. Then, because Robert and Thomas are to retain ownership of the Col-eman Dam parcel, the district court shall order an additional owelty payment from Kenneth to his brothers. This payment, in addition to reflecting the devaluation of the parcel, is to be calculated with an eye to the tax consequences faced by Robert and Thomas as a result of receiving the payment.

## IV. *Attorney's Fees and Costs*

Prior to trial, Robert and Thomas served Kenneth with an offer of judgment pursuant to NRCP 68. NRCP 68 invests the district court with discretion to allow attorney's fees when the judgment obtained by the offeree is not more favorable than the offer. Robert argues that the court should have awarded attorney's fees because the judgment obtained by Kenneth was not more favor-able than the offer made by Robert and Thomas.

An award of attorney's fees and costs pursuant to NRCP 68 is discretionary with the district court and its discretion will not be disturbed absent a clear abuse. Bidart v. American Title, 103 Nev. 175, 734 P.2d 732 (1987). Robert attempts to show by simple calculation of property values that the offer was more favorable to Kenneth than the judgment. In our view, the district court acted within its discretion when it refused to award attor-

ney's fees and costs. The court, desiring that each brother be allowed to continue in his respective business, awarded Kenneth the entire Dolf Ranch property. The court concluded, based on substantial evidence, that this award was necessary to preserve the Dolf Ranch as an economic farm unit. Under the terms of the settlement offer, the Dolf Ranch property would have been divided, with Robert and Thomas taking some 160 acres. Had Kenneth accepted the offer, he would have jeopardized the viability of the Dolf Ranch. Thus, the judgment obtained by Kenneth was more favorable than the offer made by Robert and Thomas.

Furthermore, in an equitable action such as this, a simple comparison of dollar amounts is an inappropriate standard for determining which result is more favorable. *Cf.* Leeming v. Leeming, 87 Nev. 530, 535, 490 P.2d 342, 345 (1971) (concluding that NRCP 68 is inapplicable to divorce proceedings because of the many issues that are not susceptible to an arithmetic calculation and the importance of the parties' personal goals). Accordingly, we conclude that the district court acted within its discretion when it refused to award attorney's fees and costs to Robert and Thomas.

## CONCLUSION

Robert's remaining contentions lack merit. For the reasons given above, we reverse the judgment of the district court with respect to the Coleman Dam parcel, and we remand this case to the lower court for proceedings consistent with this opinion. We affirm in all other respects the judgment entered below.