**TICOR TITLE INSURANCE COMPANY OF CALIFORNIA, Plaintiff,**

v.

**FFCA/IIP 1988 PROPERTY COMPANY, et al., Defendants.**

**No. 3:93–CV–692RM.**

United States District Court,
N.D. Indiana,
South Bend Division.

July 5, 1995.

---

Paul J. Peralta, Baker and Daniels, South Bend, IN, Ronald D. Gifford, Baker and Daniels, Indianapolis, IN, for plaintiff Ticor Title Insurance Company of California.

E. Spencer Walton, Jr., Louise A. Kirk, May Oberfell and Lorber, South Bend, IN, Alan S. Townsend, Stephen E. Arthur, Bose McKinney and Evans, Indianapolis, IN, Glen A. Burbridge, Alan W. Anderson, Elizabeth E. Brown, Andrew P. McCallin, Rothgerber Appeal Powers and Johnson, Denver, CO, for defendants FFCA/IIP 1988 Property Co. and Franchise Finance Corp. of America.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This cause comes before the court on plaintiff Ticor Title Insurance Company of California's ("Ticor") motion for summary judgment, defendants FFCA/IIP 1988 Property Company and Franchise Finance Corporation of America's (collectively referred to as "defendants") motion for partial summary judgment, and other various motions, including the defendants' motion for oral argument, the defendants' motion to deem their statement of material facts admitted, Ticor's motion to file its statement of genuine issues instanter, the defendants' motion for reconsideration of an order allowing Ticor to file a reply brief, or in the alternative, to strike the reply brief, and the defendants' motion for leave to file a reply brief with respect to its motion for partial summary judgment.

The parties' briefs have sufficiently apprised the court of the relevant issues, and accordingly the court denies the defendants' motion for oral argument. For the following reasons, the court grants Ticor's motion for summary judgment, denies the defendants' motion for partial summary judgment, denies the defendants' motion to deem their statement of material facts admitted, grants Ticor's motion to file instanter its statement of genuine issues, denies the defendants' motion for reconsideration of an order allowing Ticor to file a reply brief, or in the alternative, to strike the reply brief, and grants the defendants' motion for leave to file a reply brief with respect to their motion for partial summary judgment.

I.

Defendant Franchise Finance Corporation of America ("FFCA") is a Delaware corporation and a partner in several partnerships that purchase new and existing restaurants and simultaneously leases them back to the sellers. FFCA typically uses standard documentation to memorialize the sale-leaseback transactions. Under the terms of these agreements, FFCA acquires ownership of the real property in fee simple through a general warranty deed. A purchase agreement expressly states that FFCA is contemporaneously entering into a lease of the property to the seller, and the lease is attached as an exhibit to the purchase agreement. Under the standard lease agreement, the lessee has an option to purchase the property after ten years for the greater of the fair market value of the property or the FFCA's initial cost of purchasing the property.

Ticor writes title insurance policies for properties located throughout the United States, including in Indiana. Throughout the 1980s, Ticor and its predecessor, Pioneer Title Insurance Company, issued title insurance policies to FFCA in over eight hundred sale-leaseback transactions. Ticor also acted as the escrow and closing agent with respect to each of these transactions.

One of the FFCA partnerships engaged in sale-leaseback transactions is FFCA/IIP 1988 Property Company (the "Partnership"). On August 3, 1989, the Partnership purchased from and leased back to Mr. R. Vijay Raghavan a Hardee's Restaurant in Granger, Indiana. Ticor issued a title insurance policy with respect to that property and served as the escrow and closing agent for the transaction. On July 30, 1991, Mr. Raghavan defaulted on his lease, and on August 12, 1991 he filed a voluntary Chapter 11 petition in bankruptcy. During the course of those bankruptcy proceedings, Mr. Raghavan attempted to recharacterize the Partnership's ownership interest in the property as a security interest by claiming that the deed was actually a mortgage.

FFCA did not submit written notice of Mr. Raghavan's recharacterization claim to Ticor

until February 26, 1993. On May 26, 1993, FFCA and Mr. Raghavan resolved the recharacterization claim and filed an Agreed Entry with the bankruptcy court. In the Agreed Entry, Mr. Raghavan acknowledged that the Partnership owned the property and that the lease was a true lease and not a security agreement. As mentioned, FFCA did not notify Ticor of Mr. Raghavan's recharacterization claim until February 26, 1993. At that time, FFCA sent to Ticor a notice of claim letter, asserting that Ticor was obligated to pay approximately $36,000 in legal fees that FFCA incurred with respect to the recharacterization claim; the requested amount was raised to about $70,-000 in September 1993.

Ticor brought this action on September 1, 1993 in St. Joseph County Circuit Court seeking a determination of the parties' rights and obligations under the title insurance policy covering the property purchased from Mr. Raghavan. The defendants removed the action to this court and filed counterclaims against Ticor seeking a declaratory judgment in its favor, and also seeking damages (including punitive damages) for breach of contract and breach of the duty of good faith and fair dealing.

## II.

### A.

The parties' cross-motions were filed on October 3, 1994; responses were filed on November 4, 1994. On November 6, 1994, the defendants filed a motion to deem their statement of material facts admitted without controversy because Ticor had not included a statement of genuine issues in its brief in response to the defendants' summary judgment motion. District Rule 56.1 provides that a party's brief in response to a summary judgment motion should include

in its text or appendix thereto a "Statement of Genuine Issues" setting forth, with appropriate citations to discovery responses, affidavits, depositions, or other admissible evidence, all material facts as to which it is contended there exists a genuine issue necessary to be litigated.

In determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion, as supported by the depositions, discovery responses, affidavits and other admissible evidence on file.

N.D.Ind.L.R. 56.1.

■■■ That Ticor failed to comply with this rule when it failed to include a statement of genuine issues in its response brief is beyond dispute, and the court has discretion to require strict compliance with the District Rule. *See, e.g., Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 923 (7th Cir. 1994). The defendants have not been prejudiced by Ticor's failure, however, because Ticor filed a motion to file instanter its statement of genuine issues on November 22, 1994. The court grants Ticor's motion to file its statement of genuine issues, and deems such filed as of November 22, 1994. Therefore, the court denies the defendants' motion to deem admitted without controversy their statement of material facts.

### B.

After the parties filed their cross-motions for summary judgment and response briefs, Ticor filed a motion to file a reply brief with respect to its summary judgment motion; the court granted Ticor's motion on November 15. One week later, the defendants filed a motion for reconsideration of the court's decision to allow Ticor to file a reply brief, or in the alternative, to strike Ticor's reply brief. In their motion, the defendants contend that the parties had agreed by letter that reply briefs would not be needed and therefore would not be filed with respect to the cross-motions for summary judgment. Ticor responds that although the parties had agreed not to file reply briefs, it felt that a reply brief was necessary to discuss arguments and evidence raised in the defendants' response to Ticor's summary judgment motion.

On December 16, the defendants filed a motion for leave to file a reply brief with respect to its motion for partial summary judgment, arguing that it should be allowed to file the reply brief since Ticor had filed a total of three briefs. Since the court previously allowed Ticor to file a reply brief, it shall afford the same privilege to the defendants. The court grants the defendants' motion for leave to file a reply brief, and deems the defendants' reply brief filed as of December 16. Having granted the defendants' motion for leave to file a reply brief, the court denies the defendants' motion for reconsideration of the order allowing Ticor to file a reply brief, or in the alternative, to strike Ticor's reply brief.

### III.

With these preliminary matters resolved, the court turns to the parties' cross-motions for summary judgment. Ticor seeks summary judgment on its complaint for a declaratory judgment and on the defendants' counterclaims. The defendants seek summary judgment on the declaratory judgment action.

A party seeking summary judgment must demonstrate that no genuine issue of fact exists for trial and that the movant is entitled to judgment as a matter of law. If that showing is made and the motion's opponent would bear the burden at trial on the matter that forms the basis of the motion, the opponent must come forth with evidence to show what facts are in actual dispute. A genuine factual issue exists only when there is sufficient evidence for a jury to return a verdict for the motion's opponent. Summary judgment should be granted if no reasonable jury could return a verdict for the motion's opponent.

The parties cannot rest on mere allegations in the pleadings, or upon conclusory allegations in affidavits. The court must construe the facts as favorably to the non-moving party as the record will permit, and draw any permissible inferences from the materials before it in favor of the non-moving party, as long as the inferences are reasonable. The non-moving party must show that the disputed fact is material, or

outcome-determinative, under applicable law.

*Conery v. Bath Assocs.*, 803 F.Supp. 1388, 1392–1393 (N.D.Ind.1992) (citations omitted).

### A.

The policy issued by Ticor covering the Raghavan property states, in part:

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS CONTAINED IN SCHEDULE B AND THE PROVISIONS OF THE CONDITIONS AND STIPULATIONS HEREOF, TICOR TITLE INSURANCE COMPANY OF CALIFORNIA (a Stock Company), a California corporation, herein called the Company, insures, as of the Date of Policy shown in schedule A, against loss or damage, not exceeding the amount of insurance stated in Schedule A, and costs, attorneys' fees and expenses which the Company may become obligated to pay hereunder, sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested otherwise than as stated therein;

2. Any defect in or lien or encumbrance on such title;

3. Lack of a right of access to and from the land;

4. Unmarketability of such title.

Policy at 1.

The defendants contend that this language unmistakably covers the attorneys fees it incurred defending against Mr. Raghavan's recharacterization claim because if Mr. Raghavan's claim had been successful, "the Partnership would have held only a mortgage on the property rather than fee simple title. His attack was a claim that the Partnership's title was 'vested otherwise than as stated' in the Policy."

Ticor contends that even if this language created a general duty to defend, that duty was eliminated by the policy's express exclusion for "[d]efects, liens, encumbrances, adverse claims, or other matters (a) created, suffered, assumed or agreed to by the insured claimant." Policy at 2, Exclusion 3(a). Ticor contends that since Mr. Raghavan's

recharacterization claim was dependent upon the parties' intent, it was a matter excluded by the policy because the Partnership "created, suffered, assumed or agreed to" any defect in title, and thus Ticor had no duty to defend under the terms of Exclusion 3(a). The defendants contend that since it is undisputed that the Partnership never had the actual intent to create a security agreement, Ticor cannot use Exclusion 3(a) as an exception to its duty to defend.

The parties present a specific question—whether Ticor had a duty to defend the defendants from Mr. Raghavan's recharacterization claim in light of the language of Exclusion 3(a)—that, as far as the parties' and the court's research has revealed, has not been determined by an Indiana court. As this court has stated, "[s]itting in diversity, the court's role is not to create state law, but rather to follow the principles enunciated by the state courts and to predict what the Indiana Supreme Court would hold in such a situation." *Operative Plasterers & Cement Masons Int'l Ass'n of the United States and Canada, AFL–CIO v. Benjamin,* 843 F.Supp. 1267, 1276 (N.D.Ind.1993); *see also Equitable Life Assurance Soc'y of the United States v. Bell,* 27 F.3d 1274, 1277 (7th Cir.1994) ("[T]he Indiana courts have not yet considered the precise question we confront here. We must therefore do our best to predict how the Indiana Supreme Court would resolve the issue."). "In making this decision, the Court is aided by the interpretations of other courts construing similar ... clauses in analogous insurance policies. While these opinions are instructive, this Court must be guided by general rules of contract interpretation applicable in Indiana." *Equitable Life Assurance Soc'y of the United States v. Bell,* 818 F.Supp. 245, 249 (N.D.Ind.1993), *aff'd,* 27 F.3d 1274 (7th Cir.1994).

■ Construction of an insurance contract is purely a question of law. *Tate v. Secura Ins.,* 587 N.E.2d 665, 668 (Ind.1992); *Harden v. Monroe Guar. Ins. Co.,* 626 N.E.2d 814, 818 (Ind.Ct.App.1993). Unless the insurance contract is ambiguous, the court should give to its terms their plain and ordinary meaning. *Tate v. Secura Ins.,* 587 N.E.2d at 668; *Standard Mut. Ins. Co. v.*

*Pleasants,* 627 N.E.2d 1327, 1329 (Ind.Ct. App.1994). If the terms of the policy are ambiguous, however, the court should construe the ambiguous terms against the insurer and in favor of the insured. *Tate v. Secura Ins.,* 587 N.E.2d at 668; *Indiana Farmers Mut. Ins. Co. v. Graham,* 537 N.E.2d 510, 511 (Ind.Ct.App.1989). Thus, "if reasonable people could differ as to the meaning, the contract should be construed liberally in favor of the insured." *Monroe Guar. Ins. Co. v. Campos,* 582 N.E.2d 865, 870 (Ind.Ct.App.1991). An ambiguity is not established merely because one party asserts an interpretation contrary to that asserted by the opposing party. *Sharp v. Indiana Union Mut. Ins. Co.,* 526 N.E.2d 237, 239 (Ind.Ct.App.1988). The court must construe the meaning of a insurance contract clause within the context of the entire contract. *Allstate Ins. Co. v. United Farm Bureau Mut. Ins. Co.,* 618 N.E.2d 31, 33 (Ind.Ct.App. 1993).

■ Under Indiana law, an insurer's duty to defend its insured against suit is broader than its coverage liability or duty to indemnify. *Transamerica Ins. Servs. v. Kopko,* 570 N.E.2d 1283, 1285 (Ind.1991); *Seymour Mfg. Co. v. Commercial Union Ins. Co.,* 648 N.E.2d 1214, 1217 (Ind.Ct.App.1995). "[T]he insurer's duty to defend is determined from the allegations of the complaint and from those facts known to or ascertainable by the insurer after reasonable investigation. If the pleadings disclose that a claim is clearly excluded under the policy, no defense is required." *Seymour Mfg. Co. v. Commercial Union Ins. Co.,* 648 N.E.2d at 1217. "It is the nature of the claim and not its merits that determines the duty to defend." *Terre Haute First Nat'l Bank v. Pacific Employers Ins. Co.,* 634 N.E.2d 1336, 1339 (Ind.Ct.App. 1993). Thus, "[w]hen the underlying factual basis of the complaint, even if proved true, would not result in liability under the insurance policy, the insurance company can properly refuse to defend." *Wayne Township Bd. of Sch. Comm'rs v. Indiana Ins. Co.,* 650 N.E.2d 1205, 1208 (Ind.Ct.App.1995) (citing 7C John A. Appleman, *Insurance Law and Practice* § 4683); *see also Southbend Escan Corp. v. Federal Ins. Co.,* 647 F.Supp. 962,

967 (N.D.Ind.1986) ("The insurance company can properly refuse to defend when the underlying factual basis of the complaint, even [if] proved true, would not result in liability under the insurance policy."). If the nature of Mr. Raghavan's recharacterization claim, even proved true, did not fall within the risks insured against by the insurance policy, Ticor had no duty to defend. *See Davidson v. Cincinnati Ins. Co.*, 572 N.E.2d 502, 505 (Ind.Ct.App.1991).

■ The defendants contend that the general coverage language of the policy unambiguously covered Mr. Raghavan's claim because the recharacterization claim essentially sought to convert the transaction into a security agreement. The court agrees that such a claim created the issue of whether title was "vested otherwise than as stated" in the policy. *See* Policy at 1. Thus, absent an express exclusion to coverage, the court agrees that the policy covered Mr. Raghavan's attack of the title, obliging Ticor to defend the defendants against Mr. Raghavan's attack.

■ Ticor contends that even if this language created a general duty to defend the defendants from Mr. Raghavan's attack, that duty was eliminated by Exclusion 3(a), which excludes coverage for "[d]efects, liens, encumbrances, adverse claims, or other matters (a) created, suffered, assumed or agreed to by the insured claimant." *See* Policy at 2, Exclusion 3(a). Since the general language of the policy covered Mr. Raghavan's recharacterization claim, Ticor has the burden of establishing that Exclusion 3(a) excludes the risk. *Southbend Escan Corp. v. Federal Ins. Co.*, 647 F.Supp. at 966 ("if the insurance is promised in general terms followed by specific exceptions, the insurance company has the burden of proving that a case falls within an exception"); *Mutual Hosp. Ins., Inc. v. Hagner*, 475 N.E.2d 32, 34 (Ind.Ct.App.1984). "Unless the exclusion clearly and unmistakably brings within its scope the particular act or omission that will bring it into play, the exclusion will be ineffective to exclude or destroy coverage." *American Nat'l Fire Ins. Co. v. Rose Acre*, 846 F.Supp. 731, 736 (S.D.Ind.1994) (*quoting Indiana Ins. Co. v. Granite State Ins. Co.*, 689 F.Supp. 1549,

1557 (S.D.Ind.1988)); *see also Evans v. National Life Acc. Ins. Co.*, 467 N.E.2d 1216, 1218 (Ind.Ct.App.1984).

■ The parties and the court have been unable to find Indiana law construing the terms "created, suffered, assumed or agreed to" with respect to title insurance policies, so the court must look to cases from other jurisdictions in an attempt to predict how the Indiana Supreme Court would construe this exclusion. *Operative Plasterers & Cement Masons Int'l Ass'n of the United States and Canada, AFL–CIO v. Benjamin*, 843 F.Supp. at 1276. As the defendants contend, courts generally have construed these terms to connote an intentional act on the part of the insured. For example,

> Under a title policy excepting defects and incumbrances "assumed or agreed to" by the insured, the quoted phrase was held to refer to some particular defect or incumbrance assumed or agreed to by the title conveyance to the insured, or by some collateral agreement ... The same result has been reached under policy provisions relating to defects or incumbrances "created" or "suffered" by the insured. In construing a title policy exempting from coverage defects "created or suffered" by an insured, the word "create" connotes the idea of knowledge, the performance of some affirmative act by an insured, a conscious and deliberate causation, while the term "suffer" implies the power to prevent to hinder, and includes the knowledge of what is to be done is to be done.

9 John A. Appleman, *Insurance Law and Practice* § 5208 (1981) (footnotes omitted). Similarly, the Sixth Circuit has stated:

> The term "created" has generally been construed to require a conscious, deliberate and sometimes affirmative act intended to bring about the conflicting claim, in contrast to· mere inadvertence or negligence. Similarly, the term "suffered" has been interpreted to mean consent with the intent that "what is done is to be done," and has been deemed synonymous with "permit," which implies the power to prohibit or prevent the claim from arising. Further, an insured does not assume an assessment against property "merely be-

cause he agreed to take the property 'subject to' any assessments." "Assume," under this definition requires knowledge of the specific title defect assumed. And "agreed to" carries connotations of "contracted," requiring full knowledge by the insured of the extent and amount of the claim against the insured's title. As with the other terms, this definition implies some degree of intent.

*American Sav. and Loan v. Lawyers Title Ins. Corp.,* 793 F.2d 780, 784 (6th Cir.1986) (citations omitted). In the *American Savings and Loan* case, the Sixth Circuit relied on cases from several jurisdictions, including *Brown v. St. Paul Title Insurance Corp.,* 634 F.2d 1103 (8th Cir.1980) from the Eighth Circuit, which states:

> The cases discussing the applicability of the "created or suffered" exclusion generally have stated that the insurer can escape liability only if it is established that the defect, lien or encumbrance resulted from some intentional misconduct or inequitable dealings by the insured or the insured either expressly or impliedly assumed or agreed to the defects or encumbrances in the course of purchasing the property involved. The courts have not permitted the insurer to avoid liability if the insured was innocent of any conduct causing the loss or was simply negligent in bringing about the loss.

*Brown v. St. Paul Title Ins. Co.,* 634 F.2d 1103, 1107–08 n. 8 (8th Cir.1980); *see also American Title Ins. Co. v. East West Financial,* 16 F.3d 449, 455 (1st Cir.1994) (*quoting Brown v. St. Paul Title Ins. Co.*).

Although Ticor takes issue with the defendants' interpretation of this case law, Ticor does not contest that for Exclusion 3(a) to apply as an exception to coverage, the insured must have manifested some element of intent to "create, suffer, assume or agree to" a defect in title. The parties do not dispute that if Mr. Raghavan's recharacterization claim was to succeed under Indiana law, Mr. Raghavan would have had to establish that both Mr. Raghavan and the defendants intended their transaction to create a security interest rather than a grant of title. *See, e.g., Brenneman Mechanical & Elec. v.*

*First Nat'l Bank of Logansport,* 495 N.E.2d 233, 239 (Ind.Ct.App.1986) (a claim that "a deed, absolute and unconditional on its face," is actually "nothing more than a mortgage or security device ... executed to secure an existing debt," is a matter that turns on the parties intent; "the law gives effect to the intention of the parties rather than being controlled by the form or names of the instrument."); *see also Singer v. Burcham,* 140 Ind.App. 378, 216 N.E.2d 532, 535 (1966) ("whether a deed absolute in form is in fact a mortgage depends upon the intention of the parties at the time of its execution").

It is uncontested that the defendants never had the intent to create a security interest, and that their only intent was to receive title to the property in fee simple; Mr. Raghavan has himself agreed to this fact. Thus, the defendants correctly contend that Mr. Raghavan's attempt to recharacterize the transaction as creating a security interest was without merit and would not have succeeded. This does not resolve the issue, however, because "[i]t is the nature of the claim and not its merits that determines the duty to defend." *Terre Haute First Nat'l Bank v. Pacific Employers Ins. Co.,* 634 N.E.2d at 1339. Thus, "[t]he insurance company can properly refuse to defend when the underlying factual basis of the complaint, even [if] proved true, would not result in liability under the insurance policy." *Southbend Escan Corp. v. Federal Ins. Co.,* 647 F.Supp. at 967; *see also Wayne Township Bd. of Sch. Comm'rs v. Indiana Ins. Co.,* 650 N.E.2d 1205, 1208. Therefore, if the nature of Mr. Raghavan's recharacterization claim, even proved true, did not fall within the risks insured against by the insurance policy, Ticor had no duty to defend the defendants against the recharacterization claim. *See Davidson v. Cincinnati Ins. Co.,* 572 N.E.2d at 505.

By its very nature, Mr. Raghavan's recharacterization claim alleged that the defendants intended to create a security interest when transacting with Mr. Raghavan. Were this allegation true, Exclusion 3(a) would exclude such a "defect" in title as one "created, suffered, assumed or agreed to" by the defendants. It is of absolutely no relevance that the defendants did not so intend, for Ticor's

duty to defend was based upon the nature of Mr. Raghavan's claim, and not upon its merits. *Terre Haute First Nat'l Bank v. Pacific Employers Ins. Co.*, 634 N.E.2d at 1339.

Ticor has no duty to defend against a claim that, if successful, had no possibility of invoking coverage under the title insurance policy. *See, e.g., Davidson v. Cincinnati Ins. Co.*, 572 N.E.2d at 505. Such a result is certainly in line with Indiana precedent on an insured's duty to defend, as well as with the general understanding of the rules governing the duty to defend. For example, one treatise states that

> The general rule is that the duty to defend is based on the allegations of the plaintiff's complaint. The duty arises where there is a possibility of coverage. And the allegations are taken as true for the purpose of determining the duty to defend. The allegations must be liberally construed thereby resolving any doubts in favor of the insured. The duty exists regardless of the outcome of the case.

14 George J. Couch, et al., *Cyclopedia of Insurance* § 51:42 (1982) (footnotes omitted); *see also id.* at § 51:51 (the insurer "has the duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy"). Similarly, another treatise states:

> the insurer must defend any action where, if liability is established, the insurer would be liable and required to pay damages on behalf of the insured. It can be seen that the duty to defend arises whenever there is a potential liability that the insurer may be required to pay.... Therefore an insurer is obligated to provide a defense whenever the allegations state facts, which if true, are within the ambits of the protection promised to the policy holder.

7C John A. Appleman, *Insurance Law and Practice* § 4862 (1979) (footnotes omitted). Had Mr. Raghavan's recharacterization claim succeeded, the policy would have not provided coverage to the defendants. There is no duty to defend when there is no possibility that the insurer would be required to pay if the claimant were victorious.

The court's conclusion is also in line with the only two cases that have addressed a title

insurer's duty to defend its insured from a recharacterization claim when the success of the recharacterization claim is dependent upon the insured's intent, in light of a policy exclusion for defects in title created, suffered, assumed or agreed to by the insured. The Nevada Supreme Court stated that in order for a party to recharacterize a deed as an equitable mortgage, the claimant "would have had to prove that [the insured] intended the deed to operate as a mortgage." *Bidart v. American Title Insurance Company*, 103 Nev. 175, 734 P.2d 732, 734 (1987) (citation omitted). As discussed above, this is the rule under Indiana law as well. The *Bidart* court concluded that

> the district judge was justified in concluding that the equitable mortgage theory was excluded from coverage as "created" by [the insured]. Although an equitable mortgage action depends on several objective factors, the court is ultimately called upon to determine the subjective intent of the parties. The objective factors are simply evidence of the elusive subjective intent of the parties. Therefore, a claim that a deed absolute on its face is to operate as a mortgage is a claim that the parties intended to create the mortgage.
>
> [The insurer] has clearly and unambiguously excluded such attacks from its coverage. Where there is no potential for coverage, there is no duty to defend.
>
> Based on our conclusion that the [recharacterization claim] did not give rise to a duty to defend, we affirm the judgment of the district court.

*Id.*, 734 P.2d at 734–35 (citation omitted).

The Ninth Circuit reached the same conclusion when applying Alaska law. In *Transamerica Title Insurance Company v. Alaska Federal Savings and Loan Association of Juneau*, 833 F.2d 775 (9th Cir.1987), the court noted that "[m]ost of the cases defining 'created' for the purpose of exclusions similar to the present one involve the insured's intentional misconduct, inadvertence, or negligence in bringing about the loss," and therefore held that "if Alaska Federal [the insured] intended to obtain only an equitable lien ... [it] will be deemed to have

'created' this 'defect' in title." *Id.* at 776. Thus, the court concluded that

> Transamerica's duty to defend encompasses all claims potentially within the policy's coverage. Transamerica will have to indemnify Alaska Federal only if the underlying claims are successful in creating a defect in title.

> Most of the underlying equitable lien claims will require proof of Alaska Federal's intent. Thus, these claims fall within the "created or suffered" exception because if Alaska Federal intended to obtain a security interest it "created" the "defect" in its title.

\*     \*     \*     \*     \*     \*

> As the insurance policy will cover none of the underlying claims, Transamerica has no duty to defend Alaska Federal.

*Transamerica Title Ins. Co. v. Alaska Federal Sav. and Loan Assoc. of Juneau,* 833 F.2d at 776–77; *cf. Mattson v. St. Paul Title Co of the South,* 277 Ark. 290, 641 S.W.2d 16, 17 (1982) (since insurer was not required to compensate insured for a defect in title that was created, suffered, assumed or agreed to by the insured, there was no duty to defend insured against action where pleadings alleged that insured acquired title by exercising fraud and undue influence); *Title Ins. Corp. v. Wagner,* 179 N.J.Super. 234, 431 A.2d 179, 182 (Ch.Div.1981) (claim of fraud against the insured was clearly within language of policy exclusion for defects created by insured and did not have to be defended by the insurer); *Brick Realty Corp. v. Title Guarantee & Trust Co.,* 161 Misc. 296, 291 N.Y.S. 637, 638 (City Ct.1936) ("This defendant did not insure plaintiff against the consequences of its own acts, was not liable for any loss occasioned thereby, and was not obliged to defend any suit attacking plaintiff's title, even though entirely unfounded, if based on acts claimed to have been committed by plaintiff.").

Thus, the *Bidart* and *Transamerica* courts held that the title insurer had no duty to defend against recharacterization claims because such claims necessarily allege that the insured created, suffered, assumed or agreed to the alleged defect in title. The defendants' attempts to distinguish these cases are unavailing. Although neither the *Transamerica* nor the *Bidart* case is factually identical to the instant situation, and neither constitute controlling precedent, both are relevant in deciding whether a title insurer has a duty to defend its insured from a recharacterization claim predicated on the insured's intent, in light of Exclusion 3(a). Furthermore, the court's conclusion that Ticor had no duty to defend the defendants from Mr. Raghavan's recharacterization claim is based on a logical interpretation of the phrase "created, suffered, assumed or agreed to," of the nature of recharacterization claims under Indiana law, and of an insured's duty to defend. Thus, although the *Transamerica* and *Bidart* cases certainly support the court's conclusion, the court does not rely on those cases as its sole support. The court sees no reason to predict that the Indiana Supreme Court would select any course other than this.

Ticor had no duty to defend the defendants against Mr. Raghavan's recharacterization claim. Accordingly, Ticor's motion for summary judgment with respect to its declaratory judgment must be granted, and the defendant's motion for summary judgment with respect to the declaratory judgment must be denied.

### B.

■ Ticor also seeks summary judgment on the defendants' remaining counterclaims based on breach of contract and breach of the duty of good faith and fair dealing. Because Ticor was not obligated to defend the defendants against Mr. Raghavan's recharacterization claim under the express terms of the policy, Ticor has not breached the title insurance contract, and summary judgment in Ticor's favor is warranted with respect to that claim.

■ The defendants also assert a claim that Ticor breached its duty of good faith and fair dealing. The Indiana Supreme Court established a tort predicated upon an insurer's breach of its duty of good faith and fair dealing in *Erie Insurance Company v. Hickman,* 622 N.E.2d 515 (Ind.1993):

The obligation of good faith and fair dealing with respect to the discharge of the insurer's contractual obligation includes the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; or (4) exercising any unfair advantage to pressure an insured into a settlement of his claim.

*Id.* at 519.

Ticor's refusal to pay policy proceeds, well-founded in light of the nature of Mr. Raghavan's claim and Exclusion 3(a), does not constitute a breach of its duty of good faith and fair dealing. Likewise, since Ticor was wholly justified under the terms of the policy in refusing to pay for the defendants' attorneys fees, the defendants' claim for punitive damages must also fail. *See Erie Ins. Co. v. Hickman,* 622 N.E.2d at 520 (*quoting Bud Wolf Chevrolet, Inc. v. Robertson,* 519 N.E.2d 135, 137–38 (Ind.1988)) (punitive damages may be awarded only upon the commission of a tort, and then "only if there is clear and convincing evidence that the defendant 'acted with malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing' ").

Therefore, Ticor's motion for summary judgment must also be granted with respect to the defendants' counterclaims.

## IV.

In conclusion, the court:

(1) GRANTS Ticor's motion for summary judgment (filed October 3, 1994 (# 45));

(2) DENIES the defendants' motion for partial summary judgment (filed October 3, 1994 (# 41));

(3) DENIES the defendants' motion for oral argument (filed November 4, 1994 (# 53));

(4) DENIES the defendants' motion to deem their statement of material facts admitted without controversy (filed November 6, 1994 (# 60));

(5) GRANTS Ticor's motion to file instanter its statement of genuine issues (filed November 22, 1994 (# 64));

(6) DENIES the defendants' motion for reconsideration of an order allowing Ticor to file a reply brief, or in the alternative, to strike Ticor's reply brief (filed November 22, 1994 (# 63)); and

(7) GRANTS the defendants' motion to file a reply brief with respect to their motion for partial summary judgment (filed December 16, 1994 (# 67)).

The clerk shall enter judgment in favor of the plaintiff, with costs to be taxed against the defendants.

SO ORDERED.