647 P.2d 1249

**MILLERS MUTUAL FIRE INSURANCE COMPANY OF TEXAS, a corporation, Plaintiff-Respondent,**

v.

**ED BAILEY, INC., Formerly Known as B & G Urethane, Inc., a corporation, Defendant-Appellant.**

No. 13857.

Supreme Court of Idaho.

July 7, 1982.

encourage the circumvention of I.R.C.P. 54(b). Without hesitation, we decline to encourage such practice.

378

Richard K. Smith, Burley, for defendant-appellant.

Todd J. Wilcox and Peter J. Boyd of Elam, Burke, Evans, Boyd & Koontz, Boise, for plaintiff-respondent.

BISTLINE, Justice.

I.

This is a declaratory judgment action brought to determine whether plaintiff-respondent Millers Mutual Fire Insurance Company of Texas, Inc., [Millers] under the terms of a policy it issued to defendant-appellant Ed Bailey, Inc., [Bailey] is required to defend or indemnify Bailey, in a suit brought by third parties against Bailey. The parties stipulated to the following facts.

On June 1, 1974, Millers issued a comprehensive general liability policy to Bailey's predecessor in interest, B & G Urethane, Inc. The policy ran from June 1, 1974 to June 1, 1975. The pertinent sections of the policy provide:

"I. COVERAGE A—BODILY INJURY LIABILITY

COVERAGE B—PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

Coverage A, bodily injury or

Coverage B, property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements."

The policy goes on to define "property damage" as meaning "(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period . . . ."

Occurrence is defined as "'occurrence' means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured . . . ."

In the fall of 1974, during the policy period, Bailey installed insulation (polyurethane foam) in a potato storage structure being constructed by Perc Petersen Construction, Inc., for Donald F. and Phyllis Thibault. On September 25, 1976, a fire occurred in the potato storage structure owned by the Thibaults. The Thibaults subsequently filed suit against Perc Petersen Construction, Inc., Ed Bailey, Inc., and the Upjohn Company. The Thibaults sought recovery based on theories of negligence, breach of warranty and strict products liability.

Millers refused to defend or indemnify Bailey in the Thibault suit, and instituted this declaratory judgment action to determine whether they were obligated under the policy to defend or indemnify Bailey. The district court found that Millers had no duty under the policy to defend or indemnify Bailey, and entered a memorandum decision and judgment to that effect. Bailey then perfected this appeal. The sole issue presented in this appeal is whether the Millers policy extends coverage for liability arising out of installation during the policy term of a dangerously defective product, when damages did not occur until after the expiration of the policy.

## II.

■ The "General Liability Hazards" portion of the Millers policy insures against liability arising from "Insulation Work—installation or application of acoustical or thermal insulating material in buildings or within building walls." Millers contractually obligated itself to pay costs "which the insured shall become legally obligated to pay as damages because of . . . property damage . . . caused by an occurrence . . . ." The policy contains two definitions of property damage. The first definition is "(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom . . . ." It is clear that no physical injury to or destruction of tangible property occurred during the policy period.[1] The second definition of property damage is "(2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence *during the policy period* . . ." (emphasis added).[2] The success of this appeal, then, turns upon appellant's ability to convince us that there was an "occurrence" during the policy period. "Occurrence" is defined in the policy as "an accident . . . which results in . . . property damage . . . ."[3] "Accident" is not defined.

■ This Court held in *National Aviation Underwriters v. Idaho Aviation Center,* 93 Idaho 668, 670, 471 P.2d 55, 57 (1970), that "[i]t is well settled that the time of the occurrence of an 'accident,' within the meaning of a liability indemnity policy, is not the time the wrongful act was committed but the time the complaining party was actually damaged." This rule is followed in every jurisdiction that has considered the issue except Louisiana. *See Outdoor World v. Continental Insurance Co.,* 122 Ariz. 292, 594 P.2d 546 (1979); *Travelers Insurance Co. v. C. J. Gayfer's & Co.,* 366 So.2d 1199 (Fla.App.1979); *Singsaas v. Diederich,* 307 Minn. 153, 238 N.W.2d 878 (1976); Annot., 57 A.L.R.2d 1385 (1958) and Later Case Service. *But see Audubon Coin & Stamp Co. v. Alford Safe & Lock Co.,* 230 So.2d 278 (La.App.1969). Of course, each policy must be considered individually, and the general rule regarding the definition of accident will not apply should a particular policy

---

1. We address appellant's argument that physical injury occurred when the foam was installed in more detail in part III, *infra.*

2. This definition is apparently intended to cover property not directly damaged, the use of which is dependent in some manner upon the availability of property which *is* directly damaged.

3. The orbital nature of these definitions leaves much to be desired.

contain language altering the common understanding of that word. This policy, however, contains nothing which suggests that the parties intended the word "accident" to mean anything other than what that word is commonly understood to mean, or that the parties intended liability coverage to extend to accidents in which the act complained of occurred within the policy period but the damages did not occur until after the policy had lapsed.[4]

"That an accident may be definitely located as to time when and place where, makes its use most appropriate as the single test to determine whether liability under the policy arises within its specified period. To stretch the scope of 'accident' backward in time to reach the date of the earliest beginning of any prior event which might be regarded as having a causal relation to the unlooked-for mishap would introduce ambiguity where none now exists. . . . It might be more desirable for an insured to have protection which indemnifies him against all liability arising from causative forces which come into being while the policy is in force, regardless of when the event which initiates liability occurs, rather than insurance which protects him from liability which accrues only within the term of the policy. This purpose can easily be carried out by a proper wording of the policy; but the wording in the policy under consideration here does not permit such a construction. The injuries which gave rise to a claim for damages . . . were caused by an 'accident' which occurred after the policy had been terminated. The policy does not apply to that claim." *Home Mutual Fire Insurance Co.*

*v. Hosfelt*, 233 F.Supp. 368, 370 (D.Conn. 1962).

We adhere to the views expressed in *National Aviation, supra*, that an "accident" within the meaning of a policy insuring against liability, unless otherwise defined, does not occur until damages resulting from an insured act occur.

### III.

The third party complaint against appellant charges that the polyurethane foam which appellant installed was a dangerously defective product. Appellant makes two arguments relative to this fact. First appellant invokes the well-established rule that the liability insurer's obligation to defend is to be determined by a comparison of the allegations of the complaint to the terms of the policy. *First Far West Transportation Inc. v. Carolina Casualty Insurance Co.*, 47 Or.App. 339, 614 P.2d 1187 (1980); *Transamerica Insurance Co. v. Preston*, 30 Wash.App. 101, 632 P.2d 900 (1981).

"An insurer is obligated to defend even though the complaint fails to state a claim covered by the policy, where the facts of the case, if established, present a potential liability of the insured. Doubt as to the obligation of an insurer to defend should be resolved in favor of the insured." *Pendlebury v. Western Casualty and Surety Co.*, 89 Idaho 456, 464, 406 P.2d 129, 134 (1965).

Appellant then argues that the incorporation of a defective product into a building can itself constitute property damage and therefore qualify as an "occurrence." Although the case cited by appellant for this proposition is inappropriate,[5] there are sev-

4. The policy at issue in *National Aviation, supra*, extended liability coverage for "occurrences" and defined "occurrence" as "an accident . . . which results in injury during the policy period . . . ." 93 Idaho at 669, 471 P.2d at 56. While the definition of "occurrence" in the policy at issue in this case does not include the phrase "which results in injury during the policy period," that phrase is also absent in the vast majority of policies considered in cases from other jurisdictions, yet the result is the same. As explained *infra*, this is because of

the common understanding that there is no "accident" until there is injury. It is worthy of note, however, that the more recent cases reveal a trend in such policies towards specifically including the phrase "which results in injury during the policy period" as a modifier for the word "accident" as used in the definition of occurrence. *See Outdoor World, supra; Travelers Insurance, supra.*

5. Appellant cites *Yakima Cement Products Co. v. Great American Ins. Co.*, 14 Wash.App. 557, 544 P.2d 763 (1975). This case, however, ad-

eral cases which would support appellant's argument. *See Hogan v. Midland National Insurance Co.,* 3 Cal.3d 553, 476 P.2d 825 (1970) (irregular lumber cut with defective saw—saw manufacturer's insurer liable for damages occuring prior to discovery of defect); *United States Fidelity & Guaranty Co. v. American Insurance Co.,* 169 Ind.App. 1, 345 N.E.2d 267 (1976) (damage to structure caused by defective bricks covered by supplier's policy in effect at time defect was first discovered); *Gruol Construction Co. v. Insurance Co. of North America,* 11 Wash. App. 632, 524 P.2d 427 (1974) (dry rot occurring over span of time constituted property damage and one continuing "occurrence" for liability insurance purposes). The facts in this case, however, do not place it within the class of cases cited above; no actual physical damage to the structure in this case occurred within the policy period. The most that could be said about installation of the foam is that it increased the risk of an accident happening at some point in the future. In cases in which weak cement or defective bricks are involved, some discernible effect on a building's structure occurs, or will occur without any additional causative agent. In this case, no effect other than that contracted for, i.e., installation of the insulation, occurred during the policy period. The accident, and damages, apparently resulted from a combination of the polyurethane foam and the spark from a welder's gun.

We are of the opinion that this case clearly falls into that class of cases which involve "the commission of a wrongful act which produces no discernible harm for a period of time and then suddenly manifests itself in a burst of damages." *Bartholomew v. Insurance Co. of North America,* 502 F.Supp. 246, 253 (1980). In such cases, the time of the accident is the time that the damage occurs.

■ Appellant's second argument relating to the "dangerously defective product" claim in the underlying complaint is that,

under the theory of strict products liability, it became liable upon installation of the foam and therefore its liability insurance should apply. Since this Court adopted the theory of strict products liability [6] subsequent to its decision in *National Aviation, supra,* appellant also argues that application of this theory distinguishes this case from *National Aviation.* We are not persuaded.

Appellant cites only the Restatement of the Law, Torts 2d § 402A (1965), in support of its theory. Section 402A provides:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability *for physical harm thereby caused* to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller." (Emphasis added.)

Clearly, even under a strict products liability theory, liability does not arise until damages occur. If damages could be presumed from the mere existence of a dangerously defective product, then liability would be unlimited. Appellant cites no authority in support of such a proposition and we are unable to find any. The policy is unambiguously limited to injuries that occur during the term of the policy, a conclusion which we necessarily reach notwithstanding that the short span of time until the policy lapsed following the "completed operations"

---

dressed only the question of whether the third party complaint alleged damage to *tangible* property so as to trigger the insurer's duty to defend. The case did not address the *time* at which "damage" occurs.

**6.** *See Shields v. Morton Chemical Co.,* 95 Idaho 674, 518 P.2d 857 (1974).

makes it abundantly clear that the appellant thought himself to be purchasing something more in insurance coverage than was actually delivered.

Judgment affirmed, costs to respondent. No attorney's fees awarded.

BAKES, C. J., and McFADDEN and DONALDSON, JJ., concur.

SHEPARD, J., dissents without opinion.