99 P.3d 1153 (2004)
UNITED NATIONAL INSURANCE COMPANY, and ASSICURAZIONI GENERALI S.P.A., Appellants,
v.
FRONTIER INSURANCE COMPANY, INC., and URIAH ENTERPRISES, INC., Respondents.
No. 36888.
Supreme Court of Nevada.
November 10, 2004.
*1154 Georgeson Thompson & Angaran, Chtd., and Jack G. Angaran, Reno, for Appellants.
Dickerson, Dickerson, Consul & Pocker and Richard J. Pocker, Las Vegas, for Respondents.
Before the Court En Banc.

OPINION
GIBBONS, J.
This case arises out of the collapse of the Las Vegas Hilton marquee sign on July 18, 1994. The district court granted summary judgment against appellants United National Insurance Company and Assicurazioni Generali S.P.A., holding that they owed defense and settlement expenses to respondents Frontier Insurance Company, Inc., and Uriah Enterprises, Inc. On appeal, we are asked to determine when the duty to defend and the duty to indemnify an insured arise under a comprehensive general liability (CGL) insurance policy covering "occurrences" during a policy period. To resolve these issues, we must analyze the meaning of the word "occurrence" and the phrase "property damage," as defined by the policy.
We conclude that the plain meaning of the language in the CGL insurance policy is unambiguous. The meaning of the word "occurrence" *1155 and the phrase "property damage," read together, require that a tangible, physical injury occur during the policy period in order to trigger coverage under an "occurrence" policy. We also conclude that the duty to defend arises when there is a potential for coverage based on the allegations in a complaint and the duty to indemnify arises when there is actual coverage under an insurance policy. Since the allegations in the complaints against Uriah do not allege that a tangible, physical injury occurred to the sign during the United and Generali CGL insurance policy period and no other evidence suggested that the sign sustained any such injury during the policy period, we conclude that there was both no potential for coverage and no actual coverage under the CGL insurance policy. We therefore conclude that United and Generali owed no duty either to defend or indemnify Uriah from lawsuits arising from the sign's collapse.

FACTS
On September 8, 1993, John Renton Young Lighting and Sign Company contracted with the Las Vegas Hilton Corporation to erect a 362-foot-tall marquee sign on the hotel's property. The following day, Young Sign Company subcontracted with Uriah to erect prefabricated steel support components for the sign. At the time, Uriah was insured under a CGL insurance policy issued by United and Generali, which provided:
The Underwriters will pay on behalf of the Assured all sums which the Assured shall become legally obligated to pay as damages because of:
A. Bodily Injury or
B. Property Damage
to which this insurance applies, caused by an occurrence, and the Underwriter shall have the right and duty to defend any suit against the Assured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient ....
(Emphasis added.)
The CGL insurance agreement provided coverage from April 29, 1993, through April 29, 1994. During this time, Uriah paid $40,500 in insurance premiums to United and Generali and erected the structural steel for the sign, which was completed by December 1993.
On April 29, 1994, the CGL insurance policy issued by United and Generali expired. On that date, Uriah obtained a new CGL insurance policy from Frontier. About three months later, on July 18, 1994, the sign collapsed during a violent windstorm.
As a result of the collapse, lawsuits were filed against Uriah. On April 20, 1995, Fireman's Fund Insurance Company, which was an insurer of Young Sign Company, filed a complaint naming Uriah as a defendant and alleging negligence in the erection of the sign, as well as breach of contract and breach of implied warranty. Specifically, Fireman's Fund alleged that Uriah negligently, carelessly, and improperly modified and welded connections for the sign's support structure, which resulted in the sign's collapse. On March 8, 1996, Hilton also filed a complaint naming Uriah as a defendant and alleging negligence, breach of contract, and breach of implied warranty. Uriah asked both United and Generali to defend and indemnify Uriah through their designated representative, All American Adjusters/Adjusters Corporation of America, in March 1995. However, United and Generali did not formally respond to this request until February 1998, nearly four years after the sign's collapse. They refused to cover or defend Uriah because the collapse occurred after the expiration of the policy period.[1]
Meanwhile, Frontier defended and indemnified Uriah. Eventually, Frontier settled the lawsuits brought against Uriah by Fireman's Fund and Hilton for $250,000. The costs of investigating, defending, and settling the lawsuits totaled $696,667.35.
On May 15, 1998, Frontier and Uriah filed an insurance subrogation action against United *1156 and Generali for indemnification of defense and settlement expenses. Both sides moved for summary judgment. Frontier and Uriah contended that the complaints' allegations of negligence against Uriah were broad enough to encompass an "occurrence" of "property damage," as defined by the CGL insurance policy, triggering United and Generali's duty to defend and indemnify Uriah. In response, United and Generali contended that the property damage resulting from the sign's collapse occurred after the CGL insurance policy expired and, therefore, they were under no obligation to defend or indemnify Uriah.
The district court determined that the CGL policy's language was ambiguous and should be construed against United and Generali. The district court granted partial summary judgment in favor of Frontier and Uriah, holding that United and Generali breached a duty to defend in the lawsuits. Approximately one year later, Frontier and Uriah moved for summary judgment again, and the district court entered a final judgment in their favor. Frontier and Uriah were awarded $431,070.95 in damages for defense and settlement expenses arising from this unfortunate event.

DISCUSSION
An appeal from an order granting a motion for summary judgment is reviewed de novo.[2] Summary judgment is appropriate when a case presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[3] Evidence presented in support of a motion for summary judgment must be construed in a light most favorable to the nonmoving party.[4] "`[T]he nonmoving party is entitled to have the evidence and all reasonable inferences accepted as true.'"[5] In response to a motion for summary judgment, the nonmoving party may not rest upon mere general allegations to defend its position.[6] Rather, the nonmoving party must set forth specific facts demonstrating that the case presents genuine issues of material fact warranting a trial.[7]
Here, since neither party argues that this case raises an issue involving a disputed material fact, the only issue we must address is whether the district court properly held that Frontier and Uriah were entitled to judgment. Therefore, we must analyze whether United and Generali had a duty to defend or a duty to indemnify Uriah under the CGL insurance policy. Since insurers have separate duties to defend and indemnify an insured,[8] each will be discussed separately. However, before we reach these issues, we must first turn to the policy's language and the law of contracts.

Language of the CGL insurance policy
We have previously held that "[a]n insurance policy is a contract of adhesion."[9] Accordingly, the language of an insurance policy is broadly interpreted in order to afford "the greatest possible coverage to the insured."[10] An insurance policy may restrict coverage only if the policy's language "clearly and distinctly communicates to the insured the nature of the limitation."[11] It follows that "any ambiguity or uncertainty in an insurance policy must be construed against the insurer and in favor of the insured."[12] However, we have also stated that the language of an insurance policy will be given its *1157 plain and ordinary meaning "from the viewpoint of one not trained in law,"[13] meaning, we "will not rewrite contract provisions that are otherwise unambiguous ... [or] increase an obligation to the insured where such was intentionally and unambiguously limited by the parties."[14] The question of whether an insurance policy is ambiguous turns on whether it creates reasonable expectations of coverage as drafted.[15]
In the instant case, the CGL insurance policy provides that "[t]he Underwriters will pay on behalf of the Assured all sums which the Assured shall become legally obligated to pay as damages because of ... property damage ... caused by an occurrence" during the policy period. The parties agree that there must be both an "occurrence" and "property damage" during the policy period for coverage to be effective; however, the parties disagree on when the "occurrence" must take place and what constitutes "property damage."

Occurrence
The word "occurrence" is defined in the CGL insurance policy as "an accident, including continuous or repeated exposure to conditions, which results in ... property damage." Although we have held that a similar insuring clause contained broad language,[16] this definition is also unambiguous. An ordinary, reasonable person would understand that an "occurrence" under the policy is an accident or exposure to conditions that results in property damage. However, since the definition of the word "occurrence" includes the phrase "property damage," we must read the two definitions together.

Property damage
The phrase "property damage" is defined in the CGL insurance policy as follows:
(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.
The first prong of the definition applies to physical injury to tangible property which occurs during the policy period, including the loss of use of tangible property at any time resulting therefrom. The second prong of the definition applies to the loss of use of tangible property which has not been physically injured or destroyed, provided such loss of use is caused by an accident which results in property damage during the policy period. Therefore, under both prongs of the definition of the phrase "property damage," we conclude that tangible, physical injury to property must occur during the policy period in order for coverage to be triggered.
In sum, reading the word "occurrence" and the phrase "property damage" together, we conclude that the policy language is unambiguous and requires that tangible, physical injury must occur during the CGL policy period for coverage to be triggered under either prong of the definition. This interpretation is supported by decisions in a number of other jurisdictions that have similarly interpreted identical CGL insurance policies.[17] Having established the scope of coverage under the policy, we must address the issues of whether United and Generali had a duty to defend or a duty to indemnify Uriah. We will first discuss the duty to indemnify.

Duty to indemnify
The duty to indemnify arises when an insured "becomes legally obligated to pay damages in the underlying action that gives rise to a claim under the policy."[18] In *1158 other words, for an insurer to be obligated to indemnify an insured, "the insured's activity and the resulting loss or damage [must] actually fall within the CGL policy's coverage."[19]
The record in this case does not reveal whether the district court made an express holding regarding the duty to indemnify. However, United and Generali argue that the district court's ruling effectively held that they owed a duty to indemnify Uriah for settlement expenses in the lawsuits arising from the sign's collapse. Frontier and Uriah have failed to address the issue of indemnification before this court.
Frontier and Uriah have produced no evidence that the sign experienced tangible, physical injury during the CGL insurance policy period from April 29, 1993, through April 29, 1994. Rather, Uriah's own safety officer stated that after inspecting the collapsed sign, he could not "find anything that [Uriah] ... did that went wrong."
The record reflects that the only tangible, physical injury or loss of use of the sign occurred when it collapsed on July 18, 1994. We have previously stated that "[t]he right to indemnification for litigation expenses should not depend on the pleading choices of a third party, who through an excess of caution or optimism may allege far more than he can prove at trial."[20] Accordingly, we conclude that there was no actual coverage under the CGL insurance policy and, therefore, United and Generali have no duty to indemnify either Frontier or Uriah for the settlements reached with Fireman's Fund Insurance Company or the Las Vegas Hilton Corporation.

Duty to defend
The duty to defend is broader than the duty to indemnify.[21] There is no duty to defend "[w]here there is no potential for coverage."[22] In other words, "[a]n insurer... bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy."[23] Once the duty to defend arises, "this duty continues throughout the course of the litigation."[24] If there is any doubt about whether the duty to defend arises, this doubt must be resolved in favor of the insured.[25] The purpose behind construing the duty to defend so broadly is to prevent an insurer from evading its obligation to provide a defense for an insured without at least investigating the facts behind a complaint.[26]
However, "the duty to defend is not absolute."[27] A potential for coverage only exists when there is arguable or possible coverage.[28] Determining whether an insurer owes a duty to defend is achieved by comparing the allegations of the complaint with the terms of the policy.[29]
United and Generali argue that they owed no duty to defend Uriah in the sign-collapse lawsuits because the complaints did not allege that property damage occurred during the policy period for which they insured Uriah. In response, Frontier and Uriah argue that allegations of negligence, breach of contract, and breach of implied warranty in the complaints filed by Fireman's Fund and Hilton against Uriah created a potential for coverage under the CGL insurance policy *1159 and, therefore, United and Generali owed a duty to defend Uriah in those lawsuits.
The CGL insurance policy expressly provides that United and Generali had a duty to defend Uriah against any suit, "even if any of the allegations of the suit are groundless, false, or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient." After the collapse of the sign, two complaints were filed naming Uriah as a defendant.
Fireman's Fund filed a complaint alleging, among other things, that "[p]rior to and on July 18, 1994 ... [Uriah] owed a duty... to exercise due care and caution in the erection of the sign so as to avoid harming or damaging ... property." Specifically, Fireman's Fund alleged that Uriah negligently, carelessly, and improperly modified and welded the connections for the sign's support structure and "[t]hat on July 18, 1994, the support structure for the sign suddenly, violently and calamitously collapsed causing destruction and damage to property." Hilton also filed a complaint containing similar allegations against Uriah. Therefore, the question we must answer is this: Do allegations of general negligence or negligent welding constitute an allegation of an occurrence of property damage sufficient to create a potential for coverage under the CGL insurance policy?
In Millers Mutual Fire Insurance v. Ed Bailey, the Supreme Court of Idaho considered whether a CGL insurance policy, with language identical to the one at hand, extended coverage to foam insulation installed during the policy period that caught fire after the policy expired.[30] In reading the language of the policy, the court stated that "[t]his policy ... contains nothing which suggests that the parties intended the word `accident' ... to extend to accidents in which the act complained of occurred within the policy period but the damages did not occur until after the policy had lapsed."[31] The court reasoned, "`To stretch the scope of "accident" backward in time to reach the date of the earliest beginning of any prior event which might be regarded as having a causal relation to the unlooked-for mishap would introduce ambiguity where none now exists.'"[32] The court held that "[t]he policy is unambiguously limited to injuries that occur during the term of the policy," there was no coverage under the policy, and the insurer was under no duty to defend the former insured.[33]
In the case at bar, the complaints clearly alleged that Uriah was negligent in the erection of the sign, including improper welding and modifications of the bolts connecting the various steel components of the sign. The Supreme Court of Illinois recently stated that property suffers physical, tangible injury when it "is altered in appearance, shape, color or in other material dimension."[34] It follows that "to the average mind, tangible property does not experience `physical' injury if that property suffers intangible damage."[35]
We view improper welding or general negligent acts as intangible, economic injuries and not the type of physical, tangible injury or destruction to property that a reasonable person would contemplate as covered under the policy. The complaints did not allege that any physical, tangible injury to the sign occurred during the United and Generali CGL insurance policy periodApril 29, 1993, through April 29, 1994. Rather, the complaints only alleged that the sign suffered physical, tangible injury when it collapsed on July 18, 1994, nearly three months after the United and Generali policy expired. Therefore, we conclude that there was no potential, or possible, coverage under the CGL insurance policy and United and Generali owed no duty to defend Uriah.[36]

*1160 CONCLUSION

We conclude that United and Generali owed no duty to either defend or indemnify Uriah under the language of the CGL insurance policy, where the policy period was from April 29, 1993, through April 29, 1994, and the sign collapsed on July 18, 1994. Accordingly, we reverse the district court's order granting summary judgment in favor of Frontier and Uriah and, in light of this opinion, remand with instructions to the district court to grant summary judgment in favor of United and Generali.
SHEARING C.J., AGOSTI, ROSE, BECKER, MAUPIN and DOUGLAS, JJ., concur.
NOTES
[1] The parties have not litigated waiver issues in this appeal.
[2] Bulbman, Inc. v. Nevada Bell, 108 Nev. 105, 110, 825 P.2d 588, 591 (1992).
[3] NRCP 56(c).
[4] Dermody v. City of Reno, 113 Nev. 207, 210, 931 P.2d 1354, 1357 (1997).
[5] Rockwell v. Sun Harbor Budget Suites, 112 Nev. 1217, 1222, 925 P.2d 1175, 1179 (1996) (quoting Wiltsie v. Baby Grand Corp., 105 Nev. 291, 292, 774 P.2d 432, 433 (1989)).
[6] NRCP 56(e).
[7] Id.
[8] CHI of Alaska v. Employers Reinsurance, 844 P.2d 1113, 1115 (Alaska 1993).
[9] Farmers Insurance Group v. Stonik, 110 Nev. 64, 67, 867 P.2d 389, 391 (1994).
[10] Id.
[11] Vitale v. Jefferson Ins. Co., 116 Nev. 590, 594, 5 P.3d 1054, 1057 (2000).
[12] Id.
[13] Id.
[14] Farmers, 110 Nev. at 67, 867 P.2d at 391.
[15] Bidart v. American Title, 103 Nev. 175, 178, 734 P.2d 732, 734 (1987).
[16] See Vitale, 116 Nev. at 595, 5 P.3d at 1057.
[17] See, e.g., Millers Mut. Fire Ins., Etc. v. Ed Bailey, 103 Idaho 377, 647 P.2d 1249, 1250-52 (1982); Traveler's Ins. Co. v. C.J. Gayfer's, 366 So.2d 1199, 1201-02 (Fla.Ct.App.1979).
[18] Zurich Ins, Co. v. Raymark Industries, 118 Ill.2d 23, 112 Ill.Dec. 684, 514 N.E.2d 150, 163 (1987).
[19] Outboard Marine v. Liberty Mut. Ins., 154 Ill.2d 90, 180 Ill.Dec. 691, 607 N.E.2d 1204, 1221 (1992).
[20] Piedmont Equip. Co. v. Eberhard Mfg., 99 Nev. 523, 528, 665 P.2d 256, 259 (1983).
[21] Horace Mann Ins. Co. v. Barbara B., 4 Cal.4th 1076, 17 Cal.Rptr.2d 210, 846 P.2d 792, 795 (1993).
[22] Bidart, 103 Nev. at 179, 734 P.2d at 734 (emphasis added).
[23] Gray v. Zurich Insurance Company, 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168, 177 (1966).
[24] Home Sav. Ass'n v. Aetna Cas. & Surety, 109 Nev. 558, 565, 854 P.2d 851, 855 (1993).
[25] Aetna Cas. & Sur. Co. v. Centennial Ins. Co., 838 F.2d 346, 350 (9th Cir.1988).
[26] See Hecla Min. Co. v. New Hampshire Ins. Co., 811 P.2d 1083, 1090 (Colo.1991).
[27] Aetna Cas. & Sur. Co., 838 F.2d at 350.
[28] See Morton by Morton v. Safeco Ins. Co., 905 F.2d 1208, 1212 (9th Cir.1990).
[29] See Hecla, 811 P.2d at 1089-90.
[30] 647 P.2d at 1253.
[31] Id. at 1252.
[32] Id. (quoting Home Mutual Fire Insurance Co. v. Hosfelt, 233 F.Supp. 368, 370 (D.Conn.1962)).
[33] Id. at 1253.
[34] Traveler's Ins. Co. v. Eljer Mfg., Inc., 197 Ill.2d 278, 258 Ill.Dec. 792, 757 N.E.2d 481, 496 (2001).
[35] Id.
[36] We have carefully reviewed all of Frontier and Uriah's arguments, including whether there was coverage under the incidental contracts provision or completed operations hazards provision of the policy. We conclude that these provisions are still bound by the initial policy requirement that there must be an "occurrence" of "property damage" during the policy period in order for there to be coverage and, therefore, these arguments are without merit.