FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY; AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, *Plaintiffs-Appellants*, <br><br> v. <br><br> IRONSHORE SPECIALTY INSURANCE COMPANY, *Defendant-Appellee.* | No. 18-16937 <br><br> D.C. No. 2:15-cv-00460-JAD-PAL <br><br> ORDER CERTIFYING QUESTION TO THE NEVADA SUPREME COURT |

Filed July 2, 2020

Before: Marsha S. Berzon and Sandra S. Ikuta, Circuit Judges, and Ivan L.R. Lemelle,[*] District Judge.

Order

---

[*] The Honorable Ivan L.R. Lemelle, United States District Judge for the Eastern District of Louisiana, sitting by designation.

## SUMMARY[**]

### Certification to Nevada Supreme Court

The panel certified to the Nevada Supreme Court the following questions:

> Whether, under Nevada law, the burden of proving the applicability of an exception to an exclusion of coverage in an insurance policy falls on the insurer or the insured? Whichever party bears such a burden, may it rely on evidence extrinsic to the complaint to carry its burden, and if so, is it limited to extrinsic evidence available at the time the insured tendered the defense of the lawsuit to the insurer?

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**ORDER**

We ask the Nevada Supreme Court to resolve two open questions of state law. First, we need guidance regarding whether the insurer or the insured bears the burden of proving the applicability of an exception to an exclusion of coverage in an insurance policy. We also need guidance in determining whether the party carrying such burden may rely on extrinsic evidence, and if so, whether only extrinsic evidence available at the time the insured tendered the defense of the lawsuit to the insurer is relevant for proving an exception to the exclusion. Accordingly, we certify the following questions:

> Whether, under Nevada law, the burden of proving the applicability of an exception to an exclusion of coverage in an insurance policy falls on the insurer or the insured? Whichever party bears such a burden, may it rely on evidence extrinsic to the complaint to carry its burden, and if so, is it limited to extrinsic evidence available at the time the insured tendered the defense of the lawsuit to the insurer?

Our phrasing of the questions should not restrict the Court's consideration of the issues involved. The Court may rephrase the questions as it sees fit in order to address the contentions of the parties. If the Court agrees to decide these questions, we agree to accept its decision. We recognize that the Court has a substantial caseload, and we submit these questions only because of their significance to actions brought to enforce an insurer's duty to defend under Nevada insurance law.

I

This case is an insurance coverage dispute between Ironshore Specialty Insurance Company (Ironshore), on the one hand, and American Guarantee & Liability Insurance Company and Zurich American Insurance Company (collectively, "Zurich"), on the other.[1]

Beginning in the early 2000s, about a dozen development companies built thousands of homes using various subcontractors. Eight subcontractors are relevant here.[2] Each of these subcontractors completed its work on the various properties before 2009. During this period, each was insured by Zurich for property damage that occurred during the policy period.

Some time after completion of their work on these housing developments, each of the eight subcontractors obtained an insurance policy from Ironshore. The Ironshore policy insured the subcontractors for bodily injury or property damage that occurred during the policy period. The policy period for each subcontractor began in 2009 and ended in either 2010 or 2011.

---

[1] We granted Zurich's motion to substitute Zurich American Insurance Company for Assurance Company of America and Northern Insurance Company of New York.

[2] The subcontractors are Cedco, Inc., Lukestar Corporation dba Champion Masonry, Debard Plumbing, Inc., JP Construction Co., LLC, Laird Whipple Construction, Inc., PR Construction Corp., Nevada Concrete Services, Inc. aka Stewart & Sundell, and Universal Framing, Inc.

The insurance contract between Ironshore and the eight subcontractors states, in relevant part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this Insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .
>
> This insurance applies to "bodily injury" and "property damage"only if:
>
>> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; [and]
>>
>> (2) The "bodily injury" or "property damage"occurs during the policy period.[3]

---

[3] The Ironshore policies define "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policies also define "property damage" to mean "[p]hysical injury to tangible property, including all resulting loss

In addition to the coverage provision, Ironshore's policy also includes an exclusion provision, which states:

> This insurance does not apply to any "bodily injury" or "property damage":
>
>> 1. which first existed, or is alleged to have first existed, prior to the inception of this policy. "Property damage" from "your work", or the work of any additional insured, performed prior to policy inception will be deemed to have first existed prior to the policy inception, unless such "property damage" is sudden and accidental and takes place within the policy period[]; or
>>
>> 2. which was, or is alleged to have been, in the process of taking place prior to the inception date of this policy, even if the such "bodily injury" or "property damage" continued during this policy period; or

---

of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it."

> 3. which is, or is alleged to be, of the same general nature or type as a condition, circumstance or construction defect which resulted in "bodily injury" or "property damage" prior to the inception date of this policy.

Between 2010 and 2013, homeowners who purchased homes within these development projects brought 14 construction defect lawsuits against the developers in Nevada state court (the "Underlying Lawsuits").[4]  The developers then sued each subcontractor as a third-party defendant.  The complaints in the Underlying Lawsuits alleged that the defendants performed construction work on specific properties, that the work was defective, and that the properties were damaged as a result.  The typical complaint said the following:

> Plaintiffs have discovered defects and damages within the periods of the applicable statutes of limitations that the subject property has and is experiencing defective conditions, in particular, there are damages stemming from, among other items, defectively built

---

[4] Although there was a 15th lawsuit in which homeowners sued a different subcontractor, RAMM Corp., that lawsuit is not relevant to this appeal because Zurich expressly waived any argument with respect to the district court's ruling related to that lawsuit.

> roofs, leaking windows, dirt coming through windows, drywall cracking, hardboard separating, hardboard staining, stucco cracking, stucco staining, and other poor workmanship.
>
> . . .
>
> Within the last year, Plaintiffs have discovered that the subject property has and is experiencing additional defective conditions, in particular, there are damages stemming from, among other items, defectively built roofs, leaking windows, dirt coming through windows, drywall cracking, hardboard separating, hardboard staining stucco cracking, stucco staining and other poor workmanship.

Although each complaint alleged that the homeowner suffered property damage, no complaint made specific allegations describing when or how the property damage occurred.

After being sued by the homeowners, the subcontractors tendered the defense to Zurich. Zurich agreed to defend the subcontractors against the Underlying Lawsuits. Zurich also sent tender letters to Ironshore requesting defense and indemnification on behalf of the subcontractors.

After receiving these tender letters, Ironshore investigated the claims and disclaimed coverage pursuant to the exclusion provision in its insurance policy. Specifically, Ironshore relied on paragraph 1 of the exclusion, which provides that its

insurance does not apply to property damage from work performed by a subcontractor before the policy inception, because such damage is deemed to have existed before the inception of the policy.

Zurich settled each of the claims against the subcontractors.   Zurich then sued Ironshore, seeking contribution and indemnification for the defense and settlement costs, as well as a declaration that Ironshore owed a duty to defend the subcontractors against the Underlying Lawsuits.  Ironshore moved for summary judgment, arguing that it had no duty to defend because there was no potential for coverage under the terms of its insurance policy.

The district court (Judge Jennifer Dorsey) granted summary judgment in favor of Ironshore.  The court stated that Ironshore's exclusion provision "bars coverage if the insured worked on a home before the policy-start date, even if the damage from that work actually occurred after the policy went into effect."  And because there was "no dispute that all of the construction work was done" before the policies took effect, the court concluded that Ironshore had no duty to defend.[5]  The court rejected the argument that the "sudden and accidental" exception to the exclusion of coverage applied.  The court reasoned that none of the complaints in the Underlying Lawsuits alleged that the damage occurred

---

[5] Because the district court ruled that Ironshore did not owe a duty to defend, the court did not address the narrower duty to indemnify.  *See Allstate Ins. Co. v. Miller*, 212 P.3d 318, 324 (Nev. 2009).  Therefore, this appeal does not directly implicate the duty to indemnify.

suddenly, and, absent any evidence to support such an allegation, Zurich failed to carry its burden. (The court assumed that Zurich could have introduced extrinsic evidence, but did not directly address the question.). Accordingly, the court granted Ironshore's motion for summary judgment. In effect, Judge Dorsey implicitly concluded that the insured (or in this case, Zurich) had the burden of establishing the applicability of the sudden and accidental exception to the exclusion.

Shortly before the district court issued its decision, a different Nevada district court (Judge Gloria Navarro) reached a different conclusion in a substantially identical case. *See Assurance Co. of Am. v. Ironshore Specialty Ins. Co.*, No. 2:13-cv-2191, 2015 WL 4579983 (D. Nev. July, 29, 2015), *submission deferred sub nom. Zurich Am. Ins. Co. v. Ironshore Specialty Ins. Co.*, No. 18-16857 (9th Cir. April 14, 2020) (referred to as "*Nevada Zurich II*"). After considering substantially identical facts and the same Ironshore insurance policy, Judge Navarro concluded that Ironshore owed a duty to defend because the underlying complaints in that case "did not specify when the alleged property damage occurred and did not contain sufficient allegations from which to conclude that the damage was not sudden and accidental."[6] *Nevada*

---

[6] After a bench trial, Judge Navarro also held that Ironshore failed to "meet its burden of proving the absence of actual coverage," i.e., duty to indemnify, because it failed to demonstrate that the exclusion provision bars coverage. *Nevada Zurich II*, 2017 WL 4570303, at *6 (D. Nev. Oct. 12, 2017). As previously mentioned, *supra* note 5, Judge Dorsey did not rule on the duty-to-indemnify issue, so that issue is not directly raised in the appeal underlying this certified question. Nevertheless, because the duty to indemnify is narrower than the duty to defend, *see Miller*, 212 P.3d at 324, we understand that the Nevada Supreme Court's answer to the burden-of-proof question raised in this certification order would

*Zurich II*, 2015 WL 4579983, at \*5.  Absent evidence that the alleged property damage was not sudden and accidental, the court concluded that Ironshore failed to carry its burden of showing that the exception to the exclusion did not apply.  *Id.*  Again, Judge Navarro assumed extrinsic evidence was admissible, but did not address the issue directly.  In effect, Judge Navarro implicitly concluded that the insurer (or in this case, Ironshore) had the burden of proving the nonapplicability of the exception to the exclusion.

In light of *Nevada Zurich II*, Zurich filed a motion under Rule 60(b) of the Federal Rules of Civil Procedure seeking relief from the judgment in the case underlying this certification order.  Judge Dorsey denied the motion, stating that she was not persuaded by Judge Navarro's reasoning.[7]

Zurich timely appealed.  We stay Zurich's appeal of the grant of summary judgment in favor of Ironshore pending the Nevada Supreme Court's resolution of the questions we certify here.  In a concurrently filed order, we also stay Ironshore's appeal of *Nevada Zurich II*.  *See* Order, *Zurich Am. Ins. Co. v. Ironshore Specialty Ins. Co.*, 18-16857 (9th Cir. July 2, 2020).

---

likewise answer a similar question regarding who bears the burden of proving the duty to indemnify.

[7] Zurich did not argue to Judge Dorsey, nor does it argue on appeal, that Judge Navarro's ruling had a preclusive effect.  Accordingly, any such argument is forfeited.  *See United States v. Depue*, 912 F.3d 1227, 1232–33 (9th Cir. 2019) (en banc).

II

On appeal, the key question underlying the parties' dispute relates to who bears the burden of proof in establishing the duty to defend under an insurance policy, and what evidence may be used to carry that burden.[8]  Because Zurich is seeking contribution from a nonparticipating co-insurer, Zurich bears the same burden of proof as an insured. *See United Nat'l Ins. Co. v. Frontier Ins. Co.*, 99 P.3d 1153, 1155–56 (Nev. 2004) (treating the insured and the participating insurer identically).

The complaints in the Underlying Lawsuits do not include any allegations as to when or how the alleged property damage occurred.  So, if the insured has the burden of proving the applicability of the "sudden and accidental" exception to the exclusion of coverage, then Ironshore would prevail, because the complaints in the Underlying Lawsuits do not indicate that the alleged property damage were sudden and accidental.  But if the insurer has the burden of proving that the exception to the exclusion does not apply, then Zurich would prevail under the same logic.  This result would be different only if the parties could introduce extrinsic evidence regarding whether the property damage was sudden and accidental.

---

[8] Zurich also argues that the exclusion provision in Ironshore's insurance policy "is inherently in conflict with the insuring agreement and therefore, creates an ambiguity which should be construed against [Ironshore]."  We hereby reject this argument and hold that Ironshore's policy unambiguously excludes property damage caused by work that was completed before the policy's inception, subject only to the exception from the exclusion.

A

Nevada law does not clearly resolve either the burden-of-proof question or the extrinsic-evidence question.  With respect to the burden of proof, under Nevada law, the insured bears the burden of proof initially and must demonstrate that the claim is "within the terms of the policy." *Nat'l Auto. & Cas. Ins. Co. v. Havas*, 339 P.2d 767, 768 (Nev. 1959).  If the insured carries its burden, then the burden shifts to the insurer to show that an exclusion applies.  *Id.*  But Nevada law is silent as to whether the insured's burden to show coverage includes showing the applicability of an exception to an exclusion.  There are reasonable arguments on both sides.

The argument that the insurer (here, Ironshore) bears the burden of proving the non-applicability of an exception to an exclusion of coverage is as follows.  The duty to defend is based on allegations in the complaint.  *United Nat'l*, 99 P.3d at 1158.  The insurer must defend unless there is no potential coverage under the insurance policy.  *Id*.  Where (as here) the complaint is silent on whether the property damage was sudden and accidental, there is a potential that the damage were sudden and accidental.  Therefore, it is up to the insurer to disprove such potential.

The counterargument that the insured (Zurich) bears the burden of proving that the exception to the exclusion applies is as follows.  Insurance policies are treated like contracts under Nevada law, so ordinary contract principles apply. *Century Sur. Co. v. Andrew*, 432 P.3d 180, 183 (Nev. 2018). Under such contract principles, the plaintiff has the initial obligation to prove breach, such as that the conditions precedent were fulfilled but the defendant failed to perform. *Clark Cty. Sch. Dist. v. Richardson Const., Inc.*, 168 P.3d 87,

95 n.21 (Nev. 2007).  The burden then shifts to the defendant, which has the obligation to raise an affirmative defense.  *Id.* If the defendant can establish the applicability of an affirmative defense, then the burden shifts back to the plaintiff to prove its case.  *See Nevada Ass'n Servs., Inc. v. Eighth Jud. Dist. Ct.*, 338 P.3d 1250, 1254 (Nev. 2014) ("Once a defendant shows that a voluntary payment was made [an affirmative defense], the burden shifts to the plaintiff to demonstrate that an exception to the voluntary payment doctrine applies.").

As the plaintiff, the insured must establish that the insurer has a duty to defend and breached the contract by failing to do so.  There is no duty to defend if there is no potential for coverage, *United Nat'l*, 99 P.3d at 1158, so the insured must show a potential for coverage.  If, after "comparing the allegations of the complaint with the terms of the policy," the insured has shown that "there is arguable or possible coverage," *id.*, then the burden shifts to the insurer to prove an affirmative defense, i.e., that the alleged loss is excluded from coverage, *see Havas*, 339 P.2d at 768.  Under California law, if the insurer proves the applicability of an exclusion, the burden shifts back to the plaintiff to prove that an exception to the exclusion applies, such that the insurer owed a duty to defend.  *See Aydin Corp. v. First State Ins. Co.*, 18 Cal. 4th 1183, 1188, 1194 (1998);[9] *see also Aeroquip Corp. v. Aetna Cas. & Sur. Co.*, 26 F.3d 893, 895 (9th Cir. 1994) (predicting

---

[9] Although *Aydin* involved the duty to indemnify, which under California law (just as under Nevada law) is narrower than the duty to defend, *see Certain Underwriters at Lloyd's of London v. Super. Ct.*, 24 Cal. 4th 945, 961 (2001), California courts have applied *Aydin* in the broader duty-to-defend context, *see McMillin Cos. v. Am. Safety Indem. Co.*, 233 Cal. App. 4th 518, 533 n.23 (2015); Croskey et al., *California Practice Guide: Insurance Litigation* ¶ 7:571.6 (The Rutter Group 2019).

that California, like the majority of other states, would place the burden of proving the applicability of an exception to an exclusion on the insured, because such an "allocation aligns the burden with the benefit and is consistent with the general principle under California law that while the burden is on the insurer to prove a claim covered falls within an exclusion, the burden is on the insured initially to prove that an event is a claim within the scope of the basic coverage." (quotation omitted)).  Although the Nevada Supreme Court has not spoken on this issue, given that Nevada's duty to defend appears to be identical to California's, and Nevada courts often look to California for guidance,[10] it is reasonable to conclude that the Nevada Supreme court would adopt the California approach.

## B

The allocation of the burden of proof will decide this case as a matter of law if Nevada adheres to the four corners rule. The Nevada Supreme Court has not decided whether parties may use evidence extrinsic to the complaint to carry their burden, and if so, whether they can adduce only evidence available at the time of the tender, or may also rely on evidence developed later.

Nevada's seminal insurance-coverage case, *United National*, does not resolve whether extrinsic evidence is

---

[10] Nevada's seminal case on the duty to defend is *United National*, wherein the Nevada Supreme Court cited to California case law several times.  *See* 99 P.3d at 1158 n.21, n.23, & n.25 (citing *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076 (1993); *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263 (1966); *Aetna Cas. & Sur. Co. v. Centennial Ins. Co.*, 838 F.2d 346 (9th Cir. 1988) (applying California law)).

admissible to establish whether there is coverage. First, *United National* explains that the process for determining whether an insurer owes a duty to defend involves comparing only "the allegations of the complaint with the terms of the policy," 99 P.3d at 1158, which suggests the party that bears the burden of proof with respect to the duty to defend may not rely on extrinsic evidence. But in explaining the difference between the duty to defend and the duty to indemnify, *United National* noted that "an insurer bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy." *Id.* (alteration and omission adopted) (quoting *Gray*, 65 Cal. 2d at 276–77). It also suggested that an insurer could not evade "its obligation to provide a defense for an insured without at least investigating the facts behind a complaint." *Id.* This language suggests that an insurer may (or must) consider extrinsic evidence available at the time the insured tendered the lawsuit to the insurer.

More recently, the Nevada Supreme Court clarified that "facts outside of the complaint cannot justify an insurer's refusal to defend its insured." *Andrew*, 432 P.3d at 184 n.4. We interpret *Andrew* as prohibiting an insurer's reliance on extrinsic evidence available at the time of tender to *defeat* the duty to defend. But *Andrew* did not address whether extrinsic evidence may *trigger* the duty to defend when the complaint alone would not trigger such a duty. And the Nevada Supreme Court has not spoken on whether, if extrinsic evidence may be used, the parties may rely on evidence developed after the time of the tender to establish that the exception to the exclusion was or was not applicable. In other words, in a lawsuit such as this one, it is unclear whether the party carrying the burden of proving an exception to the exclusion may adduce new evidence to prove that the

property damage at issue was (or was not) sudden and accidental.

If Nevada adopts the rule that the parties may consider only the four corners of the complaint, then this case can be decided as a matter of law, because there is no dispute that the complaints in the Underlying Lawsuits are silent as to when or how the property damage occurred. Put differently, the complaints neither establish nor disprove that the property damage was "sudden and accidental," so the party that bears the burden of proof with respect to the exception to the exclusion will be unable to carry its burden. On the other hand, if Nevada permits the use of extrinsic evidence, then the outcome will depend on whether Zurich or Ironshore can show there is a genuine issue of material fact as to the applicability or non-applicability of the exception to the exclusion, depending on which party bears the burden and what evidence can be adduced. The Nevada Supreme Court's answer to these questions will be dispositive of these issues in the earlier action, and we will follow its decision in this case.

III

The Clerk of Court is hereby directed to transmit forthwith to the Nevada Supreme Court, under official seal of the Ninth Circuit, a copy of this order and request for certification and all relevant briefs and excerpts of record. Submission of this case remains deferred, and the case will be submitted following receipt of the Nevada Supreme Court's opinion on the certified questions or notification that it declines to answer the certified questions. The Clerk shall administratively close this docket pending a ruling by the Nevada Supreme Court regarding the certified questions. The

panel shall retain jurisdiction over further proceedings in this court. The parties shall notify the Clerk of this court within one week after the Nevada Supreme Court accepts or rejects certification. In the event the Nevada Supreme Court grants certification, the parties shall notify the Clerk within one week after the Court renders its opinion.

**QUESTIONS    CERTIFIED;    PROCEEDINGS STAYED.**

Marsha Berzon
Circuit Judge

Sandra Ikuta
Circuit Judge

Ivan L.R. Lemelle
District Judge for the Eastern District of Louisiana

## Supplemental Material

Pursuant to Rule 5 of the Nevada Rules of Appellate Procedure, we include here the designation of the parties who would be the appellants and appellee in the Nevada Supreme Court, as well as the names and addresses of counsel.

For Appellants Zurich American Insurance Company and American Guarantee & Liability Insurance Company:

William Reeves
Morales Fierro & Reeves
600 S. Tonopah Drive
Suite 300
Las Vegas, NV 89106

For Appellee Ironshore Specialty Insurance Company:

William C. Morison
Morison & Prough, LLP
2540 Camino Diablo
Suite 100
Walnut Creek, CA 94597